173 Cal.App.4th 1179 (2009)
___ Cal.Rptr.3d ___
COAST PLAZA DOCTORS HOSPITAL, Plaintiff and Appellant,
v.
BLUE CROSS OF CALIFORNIA et al., Defendants and Respondents.
No. B205892.
Court of Appeals of California, Second District, Division One.
May 11, 2009.
*1182 Hooper, Lundy & Bookman, Daron L. Tooch, Glenn E. Solomon, Suzanne S. Chou and John A. Mills for Plaintiff and Appellant.
Aileen F. Bruno for Defendant and Respondent Blue Cross of California.
Theodora Oringher Miller & Richman, Kenneth E. Johnson; Bird, Marella, Boxer, Wolpert, Nessim, Drooks & Lincenberg and Thomas R. Freeman for Defendants and Respondents Prospect Medical Group, Inc., and Nuestra Familia Medical Group.

OPINION
TUCKER, J.[*] 
In California, health care providers are statutorily required to provide emergency care to a patient without regard to the patient's ability to pay for such care. (Health & Saf. Code, § 1317.)[1] If a patient who receives emergency care is an enrollee of a health care service plan, section 1371.4, a provision of the Knox-Keene Health Care Service Plan Act of 1975 (Knox-Keene; § 1340 et seq.), requires the plan to reimburse the provider for the cost of the emergency care, barring certain exceptions inapplicable here.
In this case, Coast Plaza Doctors Hospital (Coast Plaza) provided emergency care to "Patient X," an enrollee of a group health plan insured by Blue Cross of California (Blue Cross). When Blue Cross did not reimburse Coast Plaza for the cost of the emergency care, Coast Plaza sued Blue Cross in superior court, alleging a number of state law claims derived from section 1371.4. Because Patient X's group health plan qualified as an employee benefit plan subject to the Employee Retirement Income Security Act of 1974 (ERISA; 29 U.S.C. § 1001 et seq.), the trial court sustained Blue Cross's demurrer on the ground that Coast Plaza's state law claims were subject to ordinary preemption under ERISA.
We conclude that section 1371.4 is a state law that regulates insurance within the purview of ERISA's saving clause. Therefore, we reverse the judgment in favor of Blue Cross and remand for further proceedings.

*1183 FACTS AND PROCEEDINGS BELOW

A. Alleged Facts

Because Coast Plaza appeals from a judgment of dismissal after the court sustained a demurrer, we accept as true the allegations of the complaint. (See Blank v. Kirwan (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)
Blue Cross is an insurance company licensed by the Department of Managed Health Care to operate a health care service plan pursuant to Knox-Keene. Prospect Medical Group (Prospect) provides medical care to patients, including those patients whom Blue Cross insures. Nuestra Familia Medical Group (Nuestra) is an affiliate of Prospect.[2]
Patient X is an insured of Blue Cross.[3] In 2006, Coast Plaza admitted Patient X for a partial removal of the thyroid gland. Because Coast Plaza was an "out-of-network provider" (i.e., it did not contract with Blue Cross to provide services to plan participants or beneficiaries), Patient X made a cash payment to Coast Plaza in advance of the surgery. The surgery proceeded without any complications and Patient X was transferred to Coast Plaza's postoperative care unit. A few days after the surgery, Patient X suddenly developed life-threatening acute respiratory distress. An emergency room physician intubated Patient X, placed her on a ventilator, and transferred her to Coast Plaza's intensive care unit (ICU) for further treatment.
After Coast Plaza stabilized Patient X, Patient X informed Coast Plaza that she was insured by Blue Cross or Prospect, or both entities. Coast Plaza called Nuestra to have Patient X transferred to an "in-network provider." Nuestra would not authorize the transfer and refused to be involved with any decisions regarding Patient X's medical care. Patient X remained in Coast Plaza's ICU for approximately two months, after which time she was transferred to another medical facility.
*1184 On or about September 25, 2006, Coast Plaza electronically billed Blue Cross for $582,252.97, the amount of medical charges Coast Plaza claims it incurred providing emergency care to Patient X.[4] The next day, a representative from Nuestra informed Coast Plaza that Nuestra would not pay any portion of the bill. On or about October 2, 2006, Blue Cross followed up with correspondence stating: "In order to process this claim, we require an authorization from the patient's assigned medical group ... unless these services were rendered in connection with a medical emergency. If these services were rendered in connection with a medical emergency, please supply records, as an emergency condition could not be determined from the information that we have." The complaint contains no allegation as to whether Coast Plaza provided Blue Cross with any records. It simply alleges that Blue Cross and Prospect have refused to pay, and continue to refuse to pay, any money in connection with the services Coast Plaza provided to Patient X.

B. Coast Plaza's Causes of Action

Coast Plaza sued Blue Cross, Prospect, and Nuestra in Los Angeles Superior Court for (1) recovery of services rendered, (2) recovery on an open book account, (3) quantum meruit, (4) breach of implied-in-fact contract, (5) violation of Business and Professions Code section 17200, and (6) declaratory relief. Coast Plaza cited section 1371.4 in the general allegations portion of its complaint and relied on that provision, either expressly or by reference, as a basis for each cause of action.[5] Coast Plaza sought compensatory damages in the amount of $582,252.97, plus statutory interest, restitution in the same amount, attorney fees and costs, and a declaration that Blue Cross or Prospect, or both entities were obliged to pay Coast Plaza "all monies owed for services rendered to Patient X."

C. Proceedings in Federal Court

Defendants removed the action to federal district court on the ground that Coast Plaza was seeking benefits under an employee benefit plan governed by ERISA, and thus the action was completely preempted by ERISA section *1185 502(a). (29 U.S.C. § 1132(a).)[6] Defendants maintained that Patient X had assigned her right to benefits under the group health plan to Coast Plaza. Without confirming or denying the existence of an assignment, Coast Plaza maintained that it was not bringing the action as Patient X's assignee.
The district court concluded that ERISA section 502(a) did not completely preempt Coast Plaza's action because Coast Plaza was neither a participant nor a beneficiary of Patient X's health plan. Without complete preemption under ERISA section 502(a), the district court concluded removal was improper and remanded the action to superior court. In its remand order, the district court left open the possibility that Blue Cross could raise ordinary preemption under ERISA section 514(a) (29 U.S.C. § 1144(a)) as a defense to the action in superior court.[7]

D. Proceedings in Superior Court After Remand

Defendants demurred to the action in superior court, arguing that Coast Plaza's claims "related to" ERISA, and thus were subject to ordinary preemption under ERISA section 514(a). The trial court sustained the demurrer and granted Coast Plaza leave to amend its complaint. Coast Plaza elected not to amend the complaint and the trial court subsequently entered judgment in favor of defendants. Coast Plaza timely appealed from the final judgment.

DISCUSSION

I. Standard of Review

"We review a trial court's ruling on a demurrer independently. [Citation.]" (Liska v. The Arns Law Firm (2004) 117 Cal.App.4th 275, 281 [12 Cal.Rptr.3d 21].) Our task in reviewing a judgment of dismissal following the sustaining *1186 of a demurrer is to determine whether the complaint states a cause of action. (Crowley v. Katleman (1994) 8 Cal.4th 666, 672 [34 Cal.Rptr.2d 386, 881 P.2d 1083].)

II. Ordinary Preemption[8]

A. Statutory Framework

Three provisions of ERISA expressly address the issue of ordinary preemption:
1. The preemption clause: "Except as provided in [the saving clause], the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan ...." (ERISA § 514(a), as set forth in 29 U.S.C. § 1144(a).)
2. The saving clause: "Except as provided in [the deemer clause], nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." (ERISA § 514(b)(2)(A), as set forth in 29 U.S.C. § 1144(b)(2)(A).)
3. The deemer clause: "Neither an employee benefit plan ... nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies." (ERISA § 514(b)(2)(B), as set forth in 29 U.S.C. § 1144(b)(2)(B).)
For purposes of our analysis, we accept, without deciding, that section 1371.4 relates to employee benefit plans so as to come under the preemption clause of ERISA section 514(a). (See, e.g., Hewlett-Packard Co. v. Barnes (9th Cir. 1978) 571 F.2d 502, which adopted in full the district court's decision in the same case, Hewlett-Packard Co. v. Barnes (N.D.Cal. 1977) 425 F.Supp. 1294 (Hewlett-Packard).) Hence, we must determine the following: (1) whether section 1371.4 regulates insurance so as to come under the saving clause of ERISA section 514(b)(2)(A), and (2) if section 1371.4 does regulate insurance, whether it nonetheless is subject to preemption under the deemer clause of ERISA section 514(b)(2)(B).

*1187 B. ERISA Section 514(b)(2)(A)Saving Clause

We turn to whether section 1371.4 regulates insurance so as to fall under the purview of ERISA's saving clause.
(1) In Kentucky Assn. of Health Plans, Inc. v. Miller (2003) 538 U.S. 329 [155 L.Ed.2d 468, 123 S.Ct. 1471] (Miller), the Supreme Court established a two-part test to determine whether a state law regulates insurance within the purview of ERISA section 514(b): "First, the state law must be specifically directed toward entities engaged in insurance. [Citations.] Second ... the state law must substantially affect the risk pooling arrangement between the insurer and the insured." (Miller, supra, 538 U.S. at p. 342.)[9]
Under the first prong of the Miller test, a state law "must be `specifically directed toward' the insurance industry in order to fall under ERISA's saving clause." (Miller, supra, 538 U.S. at p. 334.) In Miller, the court considered Kentucky's "Any Willing Provider" statute, which prohibited health insurers from discriminating against providers who were willing to meet the terms and conditions for participation established by the health insurers. (Id. at p. 332.) The insurers argued the statute was not "specifically directed" at the insurance industry because it did not regulate the relationship between insurers and insureds. The court rejected this argument, reasoning that the statute regulated insurance because it "impos[ed] conditions on the right to engage in the business of insurance" within Kentucky. (Id. at p. 338.)
(2) Likewise, section 1371.4 regulates insurance because it imposes conditions on the right of insurers, like Blue Cross, to conduct their business in California. The language of the provision is mandatory and insurers who elect not to comply may not engage in the business of insurance within California. (Accord, Bell v. Blue Cross of California (2005) 131 Cal.App.4th 211, 215 [31 Cal.Rptr.3d 688] ["The Knox-Keene Act is a comprehensive system of licensing and regulation under the jurisdiction of the Department of Managed Health Care" and § 1371.4 "compels [insurers] to reimburse emergency health care providers for emergency services to the plans' enrollees"].) Thus, we conclude section 1371.4 is specifically directed toward the insurance industry.[10]
*1188 (3) Under the second prong of the Miller test, a statute substantially affects the risk pooling arrangement between the insurer and the insured by "expanding the number of providers from whom an insured may receive health services" and "alter[ing] the scope of permissible bargains between insurer[] and insured[]." (Miller, supra, 538 U.S. at p. 338-339.) A statute need not "actually spread risk" in order to affect the pooling arrangement between the insurer and insured. (Id. at p. 339, fn. 3.) So long as the statute "dictates to the insurance company the conditions under which it must pay for the risk that it has assumed," the second prong is satisfied. (Ibid.)
Defendants argue that "[o]n its face, Section 1371.4 does not address risk pooling arrangements between insurer and insured." We disagree for a number of reasons.
(4) First, section 1371.4 requires the insurer to pay for emergency services rendered to the insured until the insured is stabilized. This is tantamount to dictating to the insurer the conditions under which the insurer must pay for the risk it has assumed, namely the risk that the insured may require emergency services. (Miller, supra, 538 U.S. at p. 339, fn. 3.)
Second, section 1371.4 expands the number of providers from whom an insured may receive services. Under the statute, "a health care service plan shall not require a provider to obtain authorization prior to the provision of emergency services and care necessary to stabilize the enrollee's medical condition." (§ 1371.4, subd. (b).) Absent section 1371.4, an insured requiring emergency care bears the risk of receiving delayed care, or no care at all, if an emergency care provider must obtain authorization from the insurer before treatment. By prohibiting an insurer from requiring authorization before a provider renders emergency care, section 1371.4 expands the insured's access to hospitals "by removing [an] obstacle to treatment." (Louisiana Health Service v. Rapides Healthcare (5th Cir. 2006) 461 F.3d 529, 545 [state law that removes an obstacle to treatment substantially affects risk pooling agreement between insurer and insured].)
(5) Third, section 1371.4 alters the scope of permissible bargains between the insurer and insured by telling them what bargains are acceptable and what bargains are unacceptable. (Miller, supra, 538 U.S. at p. 338; Benefit Recovery Inc. v. Donelon (5th Cir. 2008) 521 F.3d 326, 331 [state law that tells parties what bargains are acceptable in an insurance contract substantially affects risk pooling arrangement].) Section 1371.4 tells the insurer and insured that they *1189 cannot enter into a bargain whereby the insurer only pays for emergency services rendered by providers inside the insured's network.
(6) Based on the foregoing, we conclude that section 1371.4 meets Miller's two-part test for regulating insurance and, therefore, falls within the scope of ERISA's saving clause.

C. ERISA Section 514(b)(2)(B)Deemer Clause

We next turn to whether the "deemer clause" applies. If it applies in this case, then section 1371.4 is preempted. If it does not, then section 1371.4 is saved from preemption.
(7) Under the "deemer clause," a state law that regulates "self-funded" ERISA plans, even if it regulates insurance within the meaning of the saving clause, is not "saved" from preemption. (FMC Corp. v. Holliday (1990) 498 U.S. 52, 61 [112 L.Ed.2d 356, 111 S.Ct. 403] (FMC).) A "self-funded" employee benefit plan "does not purchase an insurance policy from any insurance company in order to satisfy its obligations to its participants." (Id. at p. 54.)
Here, we are not dealing with a self-funded plan. A representative of Blue Cross averred in a declaration that "Blue Cross and [employer] are parties to a group healthcare plan, Group Plan No...., established or maintained by [employer] for the purpose of providing medical, surgical and hospital care benefits to participants in this Group Plan." Thus, the "deemer clause" does not apply in this case because Patient X's group health plan purchased insurance from Blue Cross, an insurer, in order to satisfy its obligations to its participants, including Patient X. Because the "deemer clause" does not apply, the "saving clause" saves section 1371.4 from preemption.[11]
(8) For the foregoing reasons, we conclude that section 1371.4 is not subject to ordinary preemption under ERISA because it falls under the purview of ERISA's saving clause. Thus, the trial court committed reversible error by sustaining Blue Cross's demurrer to Coast Plaza's complaint.

*1190 DISPOSITION
The judgment is reversed and remanded for further proceedings consistent with this decision.[12] Coast Plaza shall recover its costs on appeal.
Mallano, P. J., and Rothschild, J., concurred.
NOTES
[*] Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.
[1] Statutory references are to the Health and Safety Code unless otherwise specified.
[2] As defendants explain, Prospect and Nuestra are independent practice associations (IPA's) that contract with Blue Cross to provide professional medical care to specified patients, including Patient X.
[3] As defendants explain, Blue Cross insures Patient X through a group health plan sponsored by the employer of Patient X's spouse, thus making Patient X a beneficiary of the plan. Both parties agree the group health plan in this case is an "employee benefit plan" under ERISA. (29 U.S.C. § 1002(1), (3).)
[4] Blue Cross contends that Patient's X's condition was not an "emergency medical condition." We must accept as true Coast Plaza's allegation that Patient X's condition was an "emergency medical condition" under the Health and Safety Code. (§ 1317.1, subd. (b).) We express no opinion, however, about whether Coast Plaza will or will not be able to prove the truth of this allegation at trial.
[5] On appeal, Coast Plaza also acknowledges that all of its "state law claims are based on the Knox-Keene Act provision which requires that a `health care service plan shall reimburse providers for emergency services to its enrollees, until the care results in stabilization of the enrollee, except as provided in subdivision (c).' Cal. Health and Safety Code § 1371.4(b)."
[6] ERISA section 502(a) provides in relevant part: "A civil action may be brought... [¶] ... by a participant or a beneficiary ... [¶] ... [¶] ... to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan ...." Although codified at 29 U.S.C. § 1132(a), we will refer to this provision as "ERISA section 502(a)," a practice used by a majority of the courts, including the United States Supreme Court, addressing ERISA preemption.
[7] ERISA section 514(a) provides in relevant part: "Except as provided in subsection (b) of this section, the provisions of this [statute] shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan ..." covered by the statute. (29 U.S.C. § 1144(a).) None of the exceptions in subsection (b) is directly at issue in this case. Although the provision is codified at 29 U.S.C. § 1144(a), we will refer to it as "ERISA section 514(a)" for the reasons stated in the preceding footnote. The parties refer to preemption under ERISA section 514(a) as "ordinary preemption," and we will do the same for consistency. We note for clarity, however, that some cases refer to preemption under ERISA section 514(a) as "defensive preemption."
[8] Coast Plaza contends that because it does not have standing either as a "participant" or "beneficiary" under ERISA section 502, its claims under Health and Safety Code section 1371.4 cannot be preempted under ERISA section 514(a). Because we decide this case on other grounds, we do not reach this issue.
[9] Blue Cross attempts to circumvent the two-part test announced in Miller altogether, arguing that under Aetna Health Inc. v. Davila (2004) 542 U.S. 200, 217-218 [159 L.Ed.2d 312, 124 S.Ct. 2488] (Davila) "even a state law that can arguably be characterized as `regulating insurance' will be pre-empted if it provides a separate vehicle to assert a claim for benefits outside of, or in addition to, ERISA's remedial scheme." But Davila is inapposite because in that case, the Supreme Court was addressing preemption under ERISA section 502(a), which is not at issue in this case.
[10] Defendants do not contend otherwise in their respondents' brief.
[11] Because the present case does not involve self-funded plans, we note that it appears to differ in that respect from the plans at issue in Hewlett-Packard. (Hewlett-Packard, supra, 425 F.Supp. at p. 1295.) To the extent that the Hewlett-Packard court concluded that the deemer clause applied without considering whether the plans were self-funded, we note that neither the district court nor the Ninth Circuit had the benefit of the Supreme Court's decision in FMC which clearly laid out the distinction between self-funded plans and non-self-funded plans as it related to the deemer clause. We, however, do have the benefit of the Supreme Court's analysis in FMC and are bound by it.
[12] We also grant both parties' requests for judicial notice but note that the documents submitted by them have no bearing on our analysis in this case.