Filed 5/21/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| JUSTIN NOLTE et al., | B252606 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC499194) |
| v. | |
| CEDARS SINAI MEDICAL CENTER, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, William F. Highberger, Judge. Affirmed.

Glacy Binkow & Goldberg, Lionel Z. Glancy, Marc L. Godino, Casey E. Sadler; Complex Litigation Group and Jeffrey A. Leon for Plaintiffs and Appellants.

Jones Day, James L. Poth and Nathaniel P. Garrett for Defendant and Respondent.

_____

Justin Nolte appeals the trial court's judgment sustaining the demurrer of Cedars Sinai Medical Center (Cedars).  We affirm.

## BACKGROUND

On January 17, 2013, Nolte filed a class action complaint in Los Angeles Superior Court, alleging that he and others similarly situated who received treatment from a physician in a Cedars medical building were charged fees by Cedars although "[t]hey did not agree to pay Cedars or to in any way enter into a contract with Cedars."

After Cedars filed a demurrer to the complaint, Nolte filed a first amended class action complaint (hereafter, the complaint) on July 18, 2013.  Nolte alleged that on September 8, 2010, he visited a doctor at the Beverly Hills Spine Center, bringing in his own x-rays for a second opinion.  The doctor's office was in a facility owed by Cedars, which is prohibited by California law from employing doctors directly.  "Cedars has a contract with Beverly Hills Spine and every other medical provider in its network by which it agrees to maintain computerized records for the medical provider's patients," a function "often provided by the medical providers themselves."  Nolte acknowledged that at the doctor's office, he "signed a general form document promising to pay Cedars for any services Cedars provides to Plaintiff," but he was never told by the doctor or by Cedars that after his doctor's visit "he would be charged a fee for setting him up as a new patient account on a computer system, let alone that Beverly Hills Spine had contracted with Cedars to perform that overhead task, and that Cedars would issue Plaintiff a bill for that 'service.'"

Attached as an exhibit was a three-page form bearing Nolte's signature and entitled "Cedars-Sinai Medical Center Conditions of Admissions" (the COA).  The COA stated that Nolte "is admitted to Cedars-Sinai Medical Center ('Hospital') for . . . outpatient . . . treatment subject to the following terms and conditions."  Nolte initialed paragraph 3, which stated that all physicians were independent contractors who "may bill separately for their services."  The COA also provided in paragraph 7 that "in consideration of the services to be rendered to the Patient, [Nolte] individually obligates

2

himself . . . to pay the account of the Hospital in accordance with the regular rates and terms of the Hospital."

Nolte was charged for the doctor's services, which he paid in full. He also received a bill from Cedars for $167.01, which after a "Hospital Discount to Patient" of $88.52 totaled $78.49. Nolte called the doctor, who told him the bill was for a "'facility'" fee, which Cedars charged for creating a patient account on the computer system "so that the physician, and Cedars, can bill the patient." Nolte alleged he was not told of this charge when he met with the doctor. Further, the COA did not alert him of the facility fee, nor did his doctor or Cedars obtain his "informed consent." There thus was no legal or equitable basis for the fee. The complaint alleged that by charging Nolte the facility fee, Cedars committed unfair business practices under Business and Professions Code section 17200 et seq., and deceptive practices under the Consumer Legal Remedies Act, Civil Code section 1750 et seq. Nolte included causes of action for unjust enrichment, restitution, and declaratory relief.

Cedars filed a demurrer arguing that the fee was part of the "'regular rates and terms of the Hospital'" which Nolte agreed to pay by signing the COA. In opposition, Nolte argued that he did not seek treatment from Cedars, Cedars provided the computer billing service to his doctor, not to Nolte, and he did not authorize, have notice of, or consent to the fee. In reply, Cedars asserted that Nolte had admitted that the charging of a facility fee was not illegal, and was attempting to rewrite the COA.

The court held a hearing on September 10, 2013, saying, "I think [Nolte] swallowed the fish when he signed the Conditions of Admission." Nolte argued that the COA's "utter opacity" was the focus of the complaint. Cedars responded that when he signed the COA Nolte obligated himself to pay the charge, and the doctor and Cedars were "two separate providers charging two separate charges for services."

In an order filed October 2, 2013, the trial court sustained the demurrer without leave to amend for the reasons stated in its written ruling issued on the day of the hearing. The court ruled that Nolte obligated himself to pay the fee when he signed the COA ("an agreement to pay was reached between Mr. Nolte and defendant before he saw his doctor

3

in a 'Cedars facility' and that the charge submitted thereafter by Cedars had been authorized in advance by the same Mr. Nolte"). "As a matter of law, Mr. Nolte consented to pay the facility fee to defendant and his pleading does not show that the contract was unconscionable or otherwise unenforceable." Nolte filed a timely appeal.

## DISCUSSION

We review the trial court's sustaining of the general demurrer independently, and "[o]ur task in reviewing a judgment of dismissal following the sustaining of a demurrer is to determine whether the complaint states a cause of action." (*Coast Plaza Doctors Hospital v Blue Cross of California* (2009) 173 Cal.App.4th 1179, 1185–1186.) We treat the demurrer as admitting all the properly pleaded material facts and consider matters which may be judicially noticed, but we do not treat as admitted contentions, deductions, or conclusions of fact or law. (*Align Technology, Inc. v Tran* (2009) 179 Cal.App.4th 949, 958.) Further, "'we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.'" (*Ibid.*) Because a demurrer tests only the legal sufficiency of the pleading, we accept as true even the most improbable alleged facts, and we do not concern ourselves with the plaintiff's ability to prove its factual allegations. (*Ibid.*) "Facts appearing in exhibits attached to the first amended complaint also are accepted as true and are given precedence, to the extent they contradict the allegations." (*Paul v. Patton* (2015) 235 Cal.App.4th 1088, 1091.) Although a demurrer does not ordinarily reach affirmative defenses, it "will lie where the complaint 'has included allegations that *clearly* disclose some defense or bar to recovery.'" (*Casterson v. Superior Court* (2002) 101 Cal.App.4th 177, 183.)

"The trial court exercises its discretion in declining to grant leave to amend. [Citation.] If it is reasonably possible the pleading can be cured by amendment, the trial court abuses its discretion by not granting leave to amend. [Citation.] The plaintiff has the burden of proving the possibility of cure by amendment." (*Grinzi v. San Diego Hospice Corp.* (2004) 120 Cal.App.4th 72, 78.) "A plaintiff may not avoid a demurrer by pleading facts or positions in an amended complaint that contradict the facts pleaded in

4

the original complaint or by suppressing facts which prove the pleaded facts false." (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 877.)

On its face, Nolte's complaint alleges that he visited a physician whose practice was located in a Cedars facility. Like all the doctors in the Cedars network, Nolte's physician's practice had contracted with Cedars for Cedars to maintain computerized records for its patients. At the physician's office, Nolte signed the COA, agreeing that he was admitted to Cedars for outpatient treatment subject to terms and conditions, one of which was that the physician was an independent contractor who may bill separately for services. Nolte agreed in the COA to pay Cedars for patient services in accordance with its regular rates and terms. Nolte's complaint also alleges he was not specifically advised, and Cedars did not obtain his informed consent, that Cedars would charge him for a facility fee for setting up his new patient account in its computer system, and that any service was not to Nolte, but to Nolte's physician.

**The demurrer was properly sustained as to the Unfair Competition Law.**

"The California Unfair Competition Law (UCL) ([Bus. & Prof. Code] § 17200 et seq.) defines "'unfair competition" as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising.""" (*Graham v. Bank of America, N.A.* (2014) 226 Cal.App.4th 594, 609.) Prevailing plaintiffs are limited to injunctive relief and restitution, but the scope of the law is broad, "'embracing "'anything that [is] a business practice and [that] at the same time is forbidden by law.""" (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180.) Even a practice not specifically proscribed by law may be deemed unfair under the statute, which "'is written in the disjunctive, [and] establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent.'" (*Ibid.*)

Nolte admits that the complaint does not allege that charging a facilities fee to a patient is specifically prohibited by law, or that it violates any law not to explicitly and individually disclose the facilities fee. As Cedars points out, Health and Safety Code section 1339.51 requires that a hospital make a written or electronic copy of its charge

5

description master (schedule of charges) available online or at the hospital location, with notices posted in the emergency department, admissions office, and billing office, that the charge master is so available, and there is no allegation that Cedars did not do so. Nolte's complaint analogizes Cedars' conduct to "cramming," in which a third party crams charges onto the bill of a business transaction between unaffiliated third parties. California law prohibits cramming in telephone bills, and allegations of cramming can state a cause of action for a statutory violation and hence a violation of the unlawful prong of the UCL. (*Elder v. Pacific Bell Telephone Co.* (2012) 205 Cal.App.4th 841, 845, 856.) Cedars, however, is not an unaffiliated third party, but the hospital in whose facility Nolte's physician is located and with whom Nolte contracted for services, and Nolte agreed to separate billing for those services. And as we stated above, Nolte alleges no statutory violation to serve as a basis for a cause of action for unlawful business practices under the UCL.

Nolte argues that the practice was unfair and fraudulent. We have held that "[a] business practice is unfair within the meaning of the UCL if it violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits. [Citations.] The determination whether a business practice is unfair ""involves an examination of [that practice's] impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer. In brief, the court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim . . . . [Citations.]' [Citation.]""" (*McKell v. Washington Mutual, Inc.* (2006) 142 Cal.App.4th 1457, 1473.) Whether a practice is unfair is a "determination . . . of fact which requires a review of the evidence from both parties. [Citation.] It thus cannot usually be made on demurrer." (*Ibid.*) Other appellate courts have applied other definitions of "unfair" in consumer UCL actions. (See *Morgan v. AT&T Wireless Services, Inc.* (2009) 177 Cal.App.4th 1235, 1254–1255.)

The complaint's UCL cause of action does not allege that the practice of separately billing first-time patients in a Cedars facility for setting up a patient account violates public policy. Nor does the complaint allege that setting up the account had no

6

value, or that the amount Cedars charged for it was unscrupulous. The complaint alleges that it is "unlawful, unfair and/or fraudulent" for Cedars to charge the fee "without prior notice that this charge would be incurred and without obtaining Plaintiff's and the other Class members' informed consent," and that the injury to Nolte "could have readily been avoided if Defendant had not misled Plaintiff and other Class members and concealed the existence of this facility fee from them." The injury alleged is not that the fee itself or its amount is unfair, but that Cedars did not specifically, separately, and individually *disclose* to Nolte that it would charge a facilities fee. Nolte also alleges that the fee was a service only to the practice group (thus avoiding, without mentioning the COA, his agreement in the COA to pay for patient services).

This does not state a claim for unfair business practices under the UCL. As noted above, hospitals are required by law to make available a schedule of charges online or at the hospital, and to provide notice to consumers (here, patients) that they have done so in a proscribed fashion, and there is no allegation that Cedars did not do so. Cedars' agreement with Nolte's physician was that it would set up the computerized billing service for the patients. Nolte signed the COA stating that he would pay Cedars' charges, and that he may be billed separately by his physician and by Cedars (which was prohibited by law from employing his physician). Cedars then issued a separate bill to Nolte for creating his patient account (a function which the complaint alleges is often provided by the medical providers themselves, who would then presumably pass on the administrative cost to the patient). Here, Nolte agreed in the COA to separate billing. ""'In general the 'unfairness' prong 'has been used to enjoin deceptive or sharp practices . . . .'" [Citation.] However, the "unfairness" prong of section 17200 "does not give the courts a general license to review the fairness of contracts . . . ." [Citation.]'" (*Searle v. Wyndham Internat., Inc.* (2002) 102 Cal.App.4th 1327, 1334.) Further, the COA nowhere provides that Cedars must seek, and Nolte must give, his "informed consent" to every bill or charge. Instead it states that the patient is "under the care and supervision of his/her attending physician," who must "obtain the Patient's informed consent, when required, to medical or surgical treatment, special diagnostic or therapeutic

7

procedures, or *Hospital services rendered to the Patient under the general and special instructions of the physician.*" (Italics added.) This clearly refers to Cedars' services provided to a patient under doctors' instructions, not to the issuance of bills for such services.

On appeal, Nolte argues that the separate bill was unfair because to him it was "'new and different.'" This was not alleged in his complaint but rather was a comment by the trial court ("It may have been something new and different which he had not encountered before in seeking medical care, but that does not make it unenforceable."). We agree that something that is "new and different" is not thereby unfair under the UCL.

Nolte also alleged that the practice of charging a facilities fee was fraudulent because the fee was not disclosed, and Cedars "misled Plaintiff and other Class members and concealed the existence of this facility fee from them." The test for fraud under section 17200 is ""'whether the public is likely to be deceived.'"" (*Searle v. Wyndham Internat., Inc.*, *supra*, 102 Cal.App.4th at p. 1335.) But as we stated above, the complaint does not allege (and the law does not provide) that Nolte had the right to have every individual charge specifically disclosed to him in advance before Cedars issued a bill. Cedars' obligation to Nolte and other consumers of medical services was that Cedars make a written or electronic copy of its schedule of charges available in the manner codified in section 1339.51 of the Health and Safety Code, and there is no allegation that Cedars did not do so. Further, "there is no requirement [under the UCL] that reasonable notice has to be the best possible notice." (*Plotkin v. Sajahtera, Inc.* (2003) 106 Cal.App.4th 953, 966.) Nolte's allegation that Cedars did not separately and specifically disclose and explain the facilities fee to him is not sufficient to state a claim that the public was likely to be deceived.

The trial court properly sustained the demurrer as to the UCL cause of action.

**Nolte has forfeited his other claims and has not shown he can amend.**

Nolte also alleged that Cedars violated the Consumer Legal Remedies Act, Civil Code section 1750 et seq., and included a cause of action for unjust enrichment, but his opening brief does not address either issue. His failure to raise the issues in his brief

forfeits the issue on appeal. (*Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4.) Further, although he briefly and belatedly addressed the issues in his reply brief, "[a]rguments presented for the first time in an appellant's reply brief are considered waived." (*Habitat & Watershed Caretakers v. City of Santa Cruz* (2013) 213 Cal.App.4th 1277, 1292, fn. 6.)

Nolte does not explain how he could amend his complaint to avoid demurrer, and he did not propose any proper amendments in opposition to the demurrer. As it is his burden to show how he could save his complaint by amendment, the trial court did not abuse its discretion in granting the demurrer without leave to amend.

## DISPOSITION

The judgment is affirmed. Costs are awarded to Cedars Sinai Medical Center.

CERTIFIED FOR PUBLICATION.


JOHNSON, J.


We concur:


ROTHSCHILD, P. J.


BENDIX, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

9