Filed 6/17/22  Certified for Publication 7/8/22 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| DAR SAINI,<br>    Plaintiff and Appellant,<br>v.<br>SUTTER HEALTH,<br>    Defendant and Respondent. | A162081<br><br>(Alameda County<br>Super. Ct. No. RG19008395) |

Plaintiff Dar Saini appeals a judgment entered after the trial court sustained without leave to amend the demurrer of defendant Sutter Health to plaintiff's third amended complaint. The amended complaint alleges a violation of the Consumers Legal Remedies Act (CLRA) (Civ. Code,[1] § 1750 et seq.) based on defendant's failure to disclose, prior to providing emergency medical treatment, that its bill for emergency services would include an evaluation and management services fee (EMS Fee), by visibly posting "signage in or around defendant's emergency rooms or at its registration windows/desks." Plaintiff acknowledges that Division One of this court recently held that identical allegations do not state a cause of action under

_____

[1] All statutory references are to the Civil Code unless otherwise noted.

1

the CLRA. (*Gray v. Dignity Health* (2021) 70 Cal.App.5th 225 (*Gray*).)[2] Plaintiff's arguments that *Gray* was wrongly decided are not persuasive.[3] Nor has plaintiff established that the trial court abused its discretion in denying further leave to amend. Accordingly, we shall affirm the judgment.

## Background

Plaintiff's original pleadings alleged causes of action for declaratory judgment, violation of the unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.), and violation of the CLRA. Following two successful demurrers by defendant, plaintiff filed a third amended complaint (hereafter complaint) eliminating the causes of action for declaratory judgment and violation of the UCL, and asserting a single cause of action for violation of section 1770, subdivisions (a)(5) and (a)(14) of the CLRA.[4]

---

[2] After briefing was complete, the Fifth Appellate District issued *Torres v. Adventist Health System/West* (2022) 77 Cal.App.5th 500 affirming a judgment on the pleadings in favor of the defendant hospital on an identical claim, albeit on different grounds. (See fn. 8, *post*.)

[3] Plaintiff's opening brief indicates that his attorney, who also represented Gray, had filed a petition for review and request for depublication of *Gray* with the California Supreme Court. Defendant's request that we take judicial notice of the January 26, 2022, order denying that request is denied as unnecessary.

[4] Section 1770 reads in relevant part: "(a) The unfair methods of competition and unfair or deceptive acts or practices listed in this subdivision undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer are unlawful: [¶] . . . [¶] (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have. [¶] . . . [¶] (14) Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law."

The complaint alleges that in April 2016, after being treated at defendant's emergency room, he was billed an EMS Fee in addition to the charges for individual items of service and treatment he received. His total charges of $4,593 (before discounts) included the undisclosed EMS Fee in the amount of $2,811. The complaint continues, "Plaintiff is informed and believes and thereon alleges that, unlike other items billed to emergency room patients, this [EMS Fee] is charged to emergency room patients simply for seeking treatment in the emergency room and is designed to cover 'overhead' and general operating and staffing expenses for operating an emergency room on a 24 hour basis. It is not like other individual billable items of treatment or services. Rather, it is . . . charged to every emergency room patient who presents and is treated at any one of defendant's emergency rooms. Further, the fact that defendant intends to charge an EMS Fee to patients simply for being seen in the emergency room is not visibly posted on signage in or around defendant's emergency rooms or at its registration windows/desks, where a patient would at least have the opportunity of knowing of its existence . . . ." Plaintiff alleges that patients "have a right to know about [the EMS Fee], and defendant owed/owes plaintiff and class members a corresponding duty to notify them of such fee in advance of providing treatment that triggers it." The complaint emphasizes, "To be clear, the signage that plaintiff would deem sufficient to notify prospective emergency room patients would be a simple, inexpensive matter, and would be of immense benefit to consumers, who would greatly benefit from a simple, prominent sign placed in defendant's emergency rooms."

California's "Payers' Bill of Rights," Health and Safety Code section 1339.50 et seq., sets forth obligations California hospitals owe to consumers with respect to the pricing of medical services. Under the Payers'

3

Bill of Rights, California hospitals must publish on the hospital's website or at the hospital itself a "charge description master" (chargemaster) listing the hospital's uniform charges for its services. (Health & Saf. Code, § 1339.51, subds. (a)(1), (b)(1)[5]; see also 42 U.S.C. § 300gg-18(e) [Medicare participating hospitals must disclose, in addition to their chargemaster, a "list" of "standard charges" in accordance with guidelines promulgated by the Secretary of Health and Human Services.]; 45 C.F.R. § 180.60, subd. (a)(1); 84 Fed.Reg. 65524-01, 65564 [Medicare participating hospitals must "post standard charges for at least 300 shoppable services that can be planned in advance."].) In addition, the Payers' Bill of Rights requires the hospital to "post a clear and conspicuous notice in its emergency department" informing patients that the chargemaster is available for review and how it may be accessed. (Health & Saf. Code, § 1339.51, subd. (c).)

Plaintiff's complaint alleges that defendant complies with the above requirements by listing the EMS Fee in its chargemaster, which is published on defendant's website. The complaint clarifies that plaintiff's claim is "not that defendant fails to list an EMS Fee as a line item in its published chargemasters, or that defendant fails to list the price of such fees in its chargemasters." (Fn. omitted.) But, the complaint further alleges, "the requirement for hospitals to post their chargemasters online . . . is not

---

[5] Health and Safety Code section 1339.51, subdivisions (a) and (b) read in relevant part: "(a) . . . a hospital . . . shall make a written or electronic copy of its charge description master available, either by posting an electronic copy of the charge description master on the hospital's Internet Website, or by making one written or electronic copy available at the hospital location. [¶] . . . [¶] (b) For purposes of this article, the following definitions shall apply: [¶] (1) 'Charge description master' means a uniform schedule of charges represented by the hospital as its gross billed charge for a given service or item, regardless of payer type."

intended to and does not inform emergency room patients of a hospital's intent to bill an [EMS] Fee for an emergency room visit, which is a matter that is not addressed by the requirements for online posting of the chargemaster. The two issues, posting of a chargemaster, and notifying prospective emergency room patients of the intention to assess an [EMS] Fee, are completely separate and very distinct issues."

The trial court sustained the hospital's demurrer to the amended complaint without leave to amend, concluding that defendant has no duty to post notice of the EMS Fee in its emergency room. The trial court ruled that the allegations of the complaint show that defendant has complied with its statutory disclosure obligations and that there is no duty to make an additional disclosure of the EMS Fee in light of the public policy reflected in federal and state statutes that emergency room care be provided to patients without delay or questioning about their ability to pay. (See Health & Saf. Code, § 1317, subd. (d) [Hospitals must render emergency services "without first questioning the patient or any other person as to his or her ability to pay therefor."]; 42 U.S.C. § 1395dd(a) & (h) (Emergency Medical Treatment and Active Labor Act or EMTALA) [Medicare participating hospitals must provide emergency services upon request and may not delay the provision of services "in order to inquire about the individual's method of payment or insurance status."].)

Plaintiff timely filed a notice of appeal from the subsequently entered judgment.

## Discussion

" ' " 'The [CLRA], enacted in 1970, "established a nonexclusive statutory remedy for 'unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or

5

which results in the sale or lease of goods or services to any consumer. . . .' [Citation.]" ' [Citation.] 'The self-declared purposes of the act are 'to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection.' " ' " (*Gray, supra,* 70 Cal.App.5th at pp. 242–243.)

In *Gray*, *supra*, 70 Cal.App.5th at page 245, the court held that the plaintiff's assertion that the hospital failed to disclose, prior to providing medical emergency treatment, that its billing for such treatment would include an emergency room charge (ER Charge) does not state a CLRA claim, under section 1770, subdivision (a)(5) or (a)(14).[6] In a well-reasoned opinion, the court found that requiring such disclosure would be inconsistent with the "strong legislative policy" reflected in the applicable "multi-faceted statutory and regulatory scheme" designed "to ensure that emergency medical care is provided immediately to those who need it, and that billing disclosure requirements are not to stand in the way of this paramount objective." (*Id.* at p. 241, citing Health & Saf. Code, §§ 1317, subd. (d), 1339.51, subd. (c); 42 U.S.C. §§ 1395dd(a) & (h), 300gg-18(e); 45 C.F.R. § 180.60, subd. (a)(1), 84 Fed.Reg. 65524-01 at p. 65564.) The court explained, "Not only did [the hospital] fully comply with all state and federal disclosure requirements, including the requirement that there be signage in its emergency room departments stating how its pricing information can be accessed [citation], but requiring individualized disclosure that the hospital will include an ER Charge in its emergency room billing, prior to providing any emergency medical services, is at odds with the spirit, if not the letter, of the hospital's statutory and regulatory obligations with respect to providing emergency

---

[6] There is no dispute that the "ER Charge" referred to in *Gray* is the same fee as the EMS Fee at issue in the present case.

6

medical care." (*Id.* at p. 240.) The court added, "Gray claims Dignity owes this pretreatment disclosure duty in order to accomplish an objective antithetical to state and federal law—to discourage some patients from remaining in the emergency room and receiving medical care. He asserts, for example, that if signage were posted—identifying the cost of each of the five levels of ER Charges (ranging from $984 to $7,356), each level accompanied by a one-word descriptor (ranging from 'minor' to 'complex/life-threatening'), with a caveat that these are 'gross' charges prior to insurance and any other reduction and '[y]our . . . costs may be substantially less'—this would be 'particularly beneficial' to patients with 'relatively minor ailments' and go a long way towards making emergency departments 'less crowded.' Even if lessening the load on our emergency rooms might be a laudable goal, Gray's sweeping assumption that those seeking care at an emergency department can accurately diagnose whether their ailment is 'relatively minor' and whether they can safely transport themselves or be transported to a lower acuity facility, is unsupportable. And while Gray complains this is a 'paternalistic' attitude and asserts every person has a right to decide for him or herself whether to seek medical treatment at an emergency department, and to do so based on readily accessible cost information, this disregards the long standing regulatory environment within which emergency departments operate, which emphasizes that no one in need of emergency care should be deterred from receiving it because of its cost." (*Id.* at pp. 241–242.)[7]

---

[7] The court also held that the same allegations failed to state a cause of action under section 1170, subdivision (a)(14). (*Gray, supra*, 70 Cal.App.5th at p. 245.) The court explained, "Gray does not allege any collateral oral misrepresentation by Dignity that is at odds with the terms of the hospital's [conditions of admission (COA)]. Nor does he allege that Dignity's COA contains any term prohibited by law. The only allegation Gray makes with

We agree defendant does not have a duty under the CLRA to disclose the EMS Fee by posting additional signage in its emergency rooms. As plaintiff's complaint acknowledges, the EMS Fee is disclosed in the hospital's chargemaster in compliance with state and federal law. Making the unsupported assumption that this disclosure is insufficient and does not in fact convey the necessary information to one seeking this information before receiving emergency room treatment, there nonetheless is no basis to require further disclosure. Courts have "identified four situations in which a failure to disclose a fact constitutes a deceptive practice actionable under the CLRA. [Citation.] Those situations arise when the defendant is the plaintiff's fiduciary, when the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff, and when the defendant actively conceals a material fact. In addition, the duty to disclose exists 'when the defendant makes partial representations that are misleading because some other material fact has not been disclosed.' [Citation.] . . . In other words, a defendant has a duty to disclose when the fact is known to the defendant and the failure to disclose it is ' "misleading in light of other facts . . . that [the defendant] did disclose." ' " (*Gutierrez v. Carmax Auto Superstores California* (2018) 19 Cal.App.5th 1234, 1258 (*Gutierrez*).) The existence of a duty to disclose under the CLRA presents a legal question subject to our de novo review. (*Ibid.*)

---

respect to the hospital's COA is that 'under Hospital's Contract,' he is assertedly 'not required to pay' the 'undisclosed' ER Charge. At most, he has alleged a breach of contract, which, alone, is not sufficient to state a claim under Civil Code section 1770, subdivision (a)(14)." (*Ibid.*) Here, plaintiff's complaint does not include any allegations regarding defendant's COA. His contention that he can amend the complaint to add such allegations and a cause of action for breach of contract is addressed *post*.

8

Plaintiff argues that defendant had a duty to disclose under the CLRA based on its "exclusive knowledge" and "intentional concealment" as alleged in his complaint. In this regard, plaintiff's complaint alleges that defendant had "exclusive knowledge that it would be billing plaintiff and class members such an [EMS] Fee;" that "this fact was not known or reasonably accessible to plaintiff or class members at the time of their emergency room visits"; that "[s]uch charges are effectively hidden by defendant's intentional failure to provide notice of them in its emergency rooms;" and that "defendant intentionally conceals such fees."

In sustaining defendant's demurrer, the trial court acknowledged that defendant "had a duty to disclose medical care fees generally" based on its "exclusive knowledge of material facts not known or reasonably accessible to the plaintiff," but concluded that defendant did not have an additional duty to disclose the EMS Fee in the manner alleged in the complaint. We agree with the trial court's reasoning. The hospital has a duty under the CLRA, as well as the many statutes cited above, to disclose the fees it intends to charge for its goods and services, including the EMS Fee. It does so in its chargemaster, to which signage in the emergency room directs those interested.[8] The question here, however, is whether defendant has a duty to

_____

[8] In *Torres v. Adventist Health System / West, supra,* 77 Cal.App.5th at page 513, the court held that the hospital's compliance with the statutory disclosure standards, including publication of its chargemaster, did not establish that plaintiff had reasonable access to the material facts about its EMS Fee. Relying on allegations in the plaintiff's complaint that the hospital's "chargemaster was 'unusable and effectively worthless for the purpose of providing pricing information to consumers'; the chargemaster failed to include the standardized [current procedural terminology] codes recognized in the industry; and the chargemaster used coding and highly abbreviated descriptions that are meaningless to consumers" (*id.* at p. 512),

call attention to the EMS Fee by additional signage in the emergency room visible to a person seeking emergency care. The *Gray* court concluded that for the reasons it explained no such duty exists, and we agree.

Plaintiff faults the *Gray* decision for failing to distinguish between discouraging treatment by questioning patients as to their "ability to pay" for the treatment and merely providing information about the cost of treatment so that the patient can make an informed decision. He argues that neither the letter nor purpose of the state and federal statutes "is to require a hospital to withhold pricing information or fail to inform the patient as to the hospital's intent to assess an [EMS] Fee for their emergency room visit." But there is no withholding of information that is provided on the hospital's chargemaster.

Moreover, the court in *Gray* carefully considered the competing interests served by ensuring that patients are fully apprised in advance of the costs of emergency services and ensuring that patients have timely access

---

the court reasoned that it could not "conclude as a matter of law that an objectively reasonable person who reviewed Hospital's chargemaster . . . could discern the circumstances in which the EMS Fee is charged or how the amount of the EMS Fee is determined" (*id.* at p. 513). We need not reach this issue, however, as plaintiff's complaint expressly disavows any claim that "defendant fails to list an EMS Fee as a line item in its published chargemasters, or that defendant fails to list the price of such fees in its chargemasters." Moreover, the chargemaster is required to be filed annually with the Office of Statewide Health Planning and Development (Health & Saf. Code, § 1339.55, subd. (a)) and that department is charged with investigating claims alleging a violation of the statute and requiring corrective action. (Health & Saf. Code, § 1339.54 ["Any person may file a claim with the department alleging a violation of this article. The department shall investigate and inform the complaining person of its determination whether a violation has occurred and what action it will take."].) Accordingly, we do not imply that defendant's chargemaster provides insufficient notice of the existence of the EMS Fee.

to emergency services. The court observed, "It is also telling that in expanding the pricing disclosure obligations of hospitals under the [Patient Protection and Affordable Care Act (Pub.L. No. 111-148 (Mar. 23, 2010) 124 Stat. 119) (Affordable Care Act)], federal regulators took care to ensure that these new obligations do not interfere with the emergency treatment obligations under the EMTALA. As we have discussed, the new pricing disclosure requirements are focused on 'shoppable' medical services, that is, services that can be scheduled in advance and, by definition, are not emergency medical services. Thus, the new pricing information is to be posted on-line in a readily accessible format for use by consumers planning for scheduled medical treatment. People seek emergency medical treatment, in contrast, for serious, and often grave, unplanned accidents or medical calamities." (*Gray, supra*, 70 Cal.App.5th at p. 241.) The court also cited legislative history showing that "when concern was raised that the new federal disclosure requirements [under the Affordable Care Act] might interfere with a hospital's obligations under the EMTALA—including providing emergency treatment to any person who seeks it and providing such treatment *before* any discussion about ability to pay—the [Centers for Medicare & Medicaid Services] stated, 'the price transparency provisions . . . do not require that hospitals post any signage or make any statement at the emergency department regarding the cost of emergency care or any hospital policies regarding prepayment of fees or payment of co-pays and deductibles. [Citation.] And while the [Centers for Medicare & Medicaid Services] lauded hospitals that go beyond posting the new pricing information, the efforts it identified were post-treatment financial counseling and workable payment strategies." (*Gray, supra*, 70 Cal.App.5th at p. 241.)

Plaintiff cites to additional legislative history suggesting that the Centers for Medicare & Medicaid Services has considered whether hospitals should make public standard charges and "offer consumers opportunities for informed decision-making by providing them with information about the cost of care which, for example, they might consider prior to visiting a hospital emergency department for treatment of a non-life threatening condition." (Citing 84 Fed.Reg. 65524-01 at p. 65536.) But, as *Gray* makes clear, the state and federal legislative bodies are in a superior position to balance these competing interests and have done so in crafting the applicable "multifaceted statutory and regulatory scheme." (*Gray, supra*, 70 Cal.App.5th at p. 241.) Our conclusion is consistent with the balance struck by the existing regulatory scheme and does not, as plaintiff suggests, disregard the "important policy in favor of providing pricing transparency to medical patients."

This reasoning applies with equal force to the alleged omission under section 1770, subdivision (a)(14). Plaintiff's complaint does not distinguish between alleged omissions with respect to the "services and/or supplies" it provides and omission regarding the "transaction" between it and plaintiff.[9]

---

[9] Plaintiff's complaint alleges, "At all relevant times, defendant violated the CLRA by engaging in and continuing to engage in deceptive practices, unlawful methods of competition, and/or unfair acts to the detriment of plaintiff and the class, including, but not limited to, the following: [¶] (a) In violation of Civil Code section 1770(a)(5), which applies in the context of omissions as well as affirmative misrepresentations, defendant's acts and practices constitute omissions/concealment that the services and/or supplies in question had characteristics, uses and/or benefits which they did not have; and [¶] (b) In violation of Civil Code section 1770(a)(14), which also applies in the context of omissions as well as affirmative misrepresentations, defendant omits/conceals that a transaction involves obligations which it does have."

Plaintiff's remaining arguments that *Gray* was wrongly decided also lack merit. Initially, plaintiff argues that *Gray* is inapposite because it primarily addresses Gray's claims under the UCL. While much of the analysis quoted above is found within the court's discussion of Gray's claim under the UCL (*Gray, supra*, 70 Cal.App.5th at pp. 240–242), the court then concluded, with respect to Gray's CRLA claims, that "[f]or all the reasons we have discussed in connection with Gray's 'unfair' business practice claim, Dignity did not owe Gray the duty he claims was owed in this case—to disclose, prior to providing any medical emergency treatment, that its billing for such treatment would include an ER Charge." (*Id*. at p. 244.)

Plaintiff also argues that the *Gray* decision incorrectly relies on *Nolte v. Cedars-Sinai Medical Center* (2015) 236 Cal.App.4th 1401 because the facility fee at issue in *Nolte* is distinguishable from the EMS Fee and ER Charge at issue here and in *Gray*. In *Nolte*, the court held that the plaintiff failed to state a cause of action under the UCL based on allegations Cedars-Sinai had not "specifically, separately, and individually *disclose*[*d*]" an administrative charge prior to the plaintiff receiving services from a physician at a hospital medical facility. (*Id*. at p. 1408.) The court explained that Nolte's complaint did "not allege (and the law does not provide) that Nolte had the right to have every individual charge specifically disclosed to him in advance before Cedars issued a bill. Cedars's obligation to Nolte and other consumers of medical services was that Cedars make a written or electronic copy of its schedule of charges available in the manner codified in section 1339.51 of the Health and Safety Code, and there is no allegation that Cedars did not do so. Further, 'there is no requirement [under the UCL] that reasonable notice has to be the best possible notice.' " (*Nolte*, at p. 1409.) The court in *Gray* found that *Nolte* was analogous and agreed with its holding. (*Gray, supra*, 70 Cal.App.5th at

13

p. 238.) Although plaintiff here is correct that the "facility fee" at issue in *Nolte* is different from the fee at issue in *Gray* and the present case, the situation nonetheless remains analogous. As the court in *Gray* explained, "This is essentially the same claim Gray advances here—that, prior to providing any emergency medical services, Dignity is required to disclose that its billing for such services will include an ER Charge. The factual distinctions to which Gray points are immaterial." (*Gray,* at p. 240.) We agree that *Nolte* is analogous and well-reasoned.

Plaintiff contends the court in Gray improperly implied a "safe harbor" for the hospital's alleged omission. In *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone* Co. (1999) 20 Cal.4th 163, 182, the court held that where specific legislation provides a "safe harbor," plaintiffs "may not use the general unfair competition law to assault that harbor." The court held further, however, that there is no implied "safe harbor" under California law for claims asserted under the UCL. As defendant notes, *Cel-Tech* did not address claims asserted under the CLRA. In any event, the *Gray* court's conclusion that the proposed duty would interfere with the statutory and regulatory requirements that hospitals provide emergency care without first addressing the costs for care or the patient's ability to pay does not imply a "safe harbor" for the alleged omission. (*Gray, supra,* 70 Cal.App.5th at p. 241.)

Nor did the *Gray* court conclude that defendant's duty to disclose the EMS Fee under the CLRA is expressly preempted by the EMTALA.[10] To the contrary, the court found that imposing a duty to disclose prior to providing

---

[10] Section 1395dd, subdivision (f) of the EMTALA states, "The provisions of this section do not preempt any State or local law requirement, except to the extent that the requirement directly conflicts with a requirement of this section."

any emergency medical services "is at odds with the spirit, if not the letter, of the hospital's statutory and regulatory obligations with respect to providing emergency medical care." (*Gray, supra,* 70 Cal.App.5th at p. 240.)

Finally, plaintiff argues for the first time on appeal that the defendant could reasonably be required to disclose on its website that "if a patient goes to the emergency room rather than an urgent care center, the patient will incur an [EMS Fee] in addition to the costs of the diagnostic testing and treatments that are provided (and mentioned on the website)." Plaintiff's complaint, however, alleges only that defendant's failure to visibly post signage in defendant's emergency rooms prior to treatment violates the CLRA. Contrary to plaintiff's assertion, additional website disclosure is not "within the scope of relief sought" in his complaint.

Accordingly, the trial court properly sustained defendant's demurrer to plaintiff's cause of action under the CLRA. Moreover, the court did not, as plaintiff suggests, abuse its discretion in denying plaintiff leave to amend. Plaintiff asserts that he should be given leave to amend his complaint to allege a cause of action for breach of contract. He argues that the COA form he signed provides that the patient is responsible only for charges "for care and services" provided to the patient and that insofar as the EMS Fees are designed to cover the hospital's overhead, operating, and administrative expenses, they are not recoverable under the terms of the agreement.[11]

---

[11] The form signed by plaintiff and submitted by defendant in connection with its demurrer reads in relevant part, "HOSPITAL CHARGES: The Hospital's charges for care and services are calculated in accordance with the Charge Description Master ('CDM') in effect at the time services are provided. If you would like to review the CDM charges, please request an appointment with a Patient Financial Services Counselor. You can also view the Hospital's CDM online at: www.oshpd.ca.gov." The form adds with

15

However, these allegations were included in plaintiff's original complaint to which a demurrer was sustained and they were not realleged in his amended complaint. By amending his complaint to omit the contract allegations, rather than appealing the trial court's order, plaintiff waived any argument that those allegations sufficiently alleged a cause of action for breach of contract. (*Aubry v. Tri-City Hospital Dist*. (1992) 2 Cal.4th 962, 966.)

## Disposition

The judgment is affirmed. Defendant shall recover its costs on appeal.

POLLAK, P. J.

WE CONCUR:

STREETER, J.
NADLER, J.*

---

respect to patients with insurance, "If my insurance does not pay all of the Hospital's charges calculated in accordance with the Hospital's CDM, for the services and items provided to me, I agree to pay the unpaid balance."

* Judge of the Sonoma County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| DAR SAINI,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>SUTTER HEALTH,<br><br>     Defendant and Respondent. | A162081<br><br>(Alameda County<br>Super. Ct. No. RG19008395)<br><br>ORDER CERTIFYING<br>OPINION FOR PUBLICATION |

THE COURT:

     The opinion in the above-entitled matter filed on June 17, 2022, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.


July 8, 2022                                       POLLAK, P.J.

| | |
|---|---|
| Trial court: | Alameda County Superior Court |
| Trial judge: | Honorable Winifred Smith |
| Counsel for plaintiff and appellant: | CARPENTER LAW<br>Gretchen Carpenter<br><br>LAW OFFICE OF BARRY KRAMER<br>Barry L. Kramer |
| Counsel for defendant and respondent: | KING & SPALDING LLP<br>Glenn E. Solomon<br>Amanda L. Hayes-Kibreab<br>Ariana E. Fuller |