Filed 3/2/23  Stevens v. Elhaj CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FOURTH APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| RONALD L. STEVENS,<br><br>  Plaintiff and Appellant,<br><br>  v.<br><br>ANGELA ELHAJ et al.<br><br>  Defendants and Respondents. | G060162<br><br>(Super. Ct. No. 30-2020-01131439)<br><br>ORDER MODIFYING OPINION AND DENYING PETITIONS FOR REHEARING; NO CHANGE IN JUDGMENT |

It is hereby ordered that the opinion filed herein on February 1, 2023, be modified in the following particulars:

1. On page 5, third full paragraph, second sentence (beginning with "In its ruling . . .") is stricken and replaced with the following sentence:  In its ruling on the owner defendants' demurrer, the court concluded all of Stevens's equitable claims against them were barred by the doctrine of laches.

2. On page 5, third full paragraph, third sentence (beginning with "Separately . . .")  is stricken and replaced with the following sentence:  Separately, for both demurrers filed, the court concluded the terms of the 1995 release that Stevens signed could not be reasonably interpreted, as Stevens urged, to mean that he agreed to

release all legal interests related to the "Chao Transaction" without including the 1994 option.

3. On page 6, first full paragraph, second sentence (beginning with "The defendants argue . . .") is stricken and replaced with the following sentence: The defendants argue the court correctly concluded the terms of the 1995 release were unambiguous and the owner defendants additionally argue the court correctly applied laches in their favor.

4. On page 6, first full paragraph, third sentence (beginning with "They additionally . . .") is stricken and replaced with the following sentence: Both the Elhaj and owner defendants argue judicial estoppel also supports an affirmance.

5. On page 14, first full paragraph, first sentence (beginning with "As noted . . .") is stricken and replaced with the following sentence: As noted, the trial court also concluded in its ruling on the owner defendants' demurrer that all of Stevens's equitable causes of action against them were barred by laches.

6. On page 15, first partial paragraph, final two sentences (beginning, respectively, with "According to . . ." and "Laches should not . . .") are stricken and replaced with the following sentence: According to Stevens's allegations, Milagros knew about Stevens's claim and dissuaded him from asserting it at an earlier point in time.

7. On page 15, first full paragraph, first sentence is stricken.

8. On page 15, first full paragraph, third sentence (beginning with "The pleaded facts . . .") is stricken and replaced with the following sentence: The pleaded facts are reasonably read to mean that Stevens chose not to directly communicate with the owner defendants between 2016 and February 2020 because he relied on a promise by Milagros that, to Stevens, rendered the noncommunication reasonable.

9. On page 15, second full paragraph, second sentence (beginning with "Based on the totality . . .") is stricken and replaced with the following sentence: Based on the totality of Stevens's allegations we must assume true at this stage, we conclude the

2

question of whether his course of conduct was reasonable should remain open to litigation beyond the demurrer stage.

10. On page 15, final partial paragraph, after the second sentence (ending with " . . . arrive at that conclusion"), the following citation is inserted: (See *Ivanoff v. Bank of America, N.A.* (2017) 9 Cal.App.5th 719, 733, fn. 2 ["we can reach a ground for demurrer not raised below if it presents a pure question of law and the parties have been given an opportunity to address it"].)

11. On page 15, final partial paragraph, final partial sentence (beginning with "We . . .") is stricken and replaced with the following sentence: We note that nothing about our conclusions in this opinion, reviewing a ruling on demurrers, should be interpreted as opinions on the ultimate merits of the parties' respective contentions, including those involving the interpretation of contractual terms and whether judicial estoppel or the doctrine of laches should bar Stevens's equitable claims.

The petitions for rehearing are denied. These modifications do not effect a change in the judgment.

DELANEY, J.

WE CONCUR:

BEDSWORTH, ACTING P. J.

SANCHEZ, J.

3

Filed 2/1/23  Stevens v. Elhaj CA4/3 (unmodified opinion)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| RONALD L. STEVENS,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>ANGELA ELHAJ et al.<br><br>    Defendants and Respondents. | G060162<br><br>(Super. Ct. No. 30-2020-01131439)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Martha K. Gooding, Judge.  Reversed and remanded with directions.  Request for judicial notice.  Granted.  Motion to dismiss.  Denied.

Thomas Vogele & Associates, Thomas A. Vogele, Timothy M. Kowal and Teddy T. Davis, for Plaintiff and Appellant.

Law Offices of David H. Hochner, David H. Hochner; Law Offices of Joseph J. London and Joseph J. London; Rutan & Tucker, Gerard M. Mooney, for Defendants and Respondents, Angela Elhaj, Mariam Elhaj and Top Hop, Inc.

Stearns Kim Stearns & Ryan, Michael James Ryan; Benedon & Serlin, Gerald M. Serlin and Wendy S. Albers, for Defendants and Respondents Grace Lindsay, Patricia R. Durand, Carmen M. Baird and Car-Mar, LLC.

## INTRODUCTION

This appeal arises from a judgment of dismissal entered after the sustaining of demurrers. In 1994, plaintiff Ronald L. Stevens and his then business partner bought a restaurant business, entering into a sublease with the restaurant owners and negotiating an option agreement with the landowners to enter into another lease decades in the future. The following year, Stevens and the partner dissolved their business relationships through, among other documents, a 1995 release signed by Stevens. That year, the former business partner negotiated his own option agreement with the landowners.

In 2016, Stevens's former business partner's wife (effectively, the successor of the partner) had a dispute with the landowners. According to Stevens, it was then he first learned about the former partner's 1995 option agreement. Also, according to Stevens, in 2016, he and the wife agreed Stevens still had an interest based on the 1994 option that the wife would honor in exchange for Stevens not getting involved in her then dispute with the owners.

In Stevens's 2020 lawsuit underlying this appeal, he alleges he still has an interest in the business property based on the 1994 option. The defendants filed demurrers the trial court sustained by applying the equitable doctrine of laches as well as the contractual terms of the 1995 release Stevens signed. We review the demurrers de novo and agree with Stevens that, on the application of the 1995 release terms, the disputed contractual language is reasonably susceptible to more than one interpretation and because the one urged by Stevens is not clearly erroneous as a matter of law, the release cannot support the court's ruling on defendants' demurrers. On laches, we conclude the doctrine should not dispose of the factual issues raised at this stage of

2

litigation.  We reverse and remand for further proceedings in accordance with this opinion.

## FACTUAL BACKGROUND[1]

*A.  Initial Dealings*

In 1976, Peichung Chao and Rosana Chao entered a lease agreement for commercial real property owned by, among others, defendants Grace Lindsay, Patricia R. Durand and Carmen M. Baird.  We will refer to the lessees and a corporation named Chao, Inc., collectively as the Chaos and not distinguish between them in our discussion. We will refer to Lindsay, Durand, Baird, and a limited liability company named Car-Mar, collectively as the owner defendants, and not distinguish between them for purposes of this opinion unless otherwise specified.

Relevant to this appeal, the initial lease included an option that was exercised to set the lease to expire in 2022.  In 1994, the restaurant owned by the Chaos was purchased jointly by Stevens and his then business partner Abed Elhaj;[2] a March 15, 1994 sublease was entered between them.  One week before that, Stevens and Abed also negotiated directly with the property owners for a lease option agreement entered that year (the 1994 option).  Relevant here, the option gave Stevens and Abed the right to enter into a lease agreement with the owners upon the expiration of the initial lease.

On May 1, 1994, two months after the 1994 option was created, Stevens and Abed assigned all of their rights, title, and interests as subtenant to a corporation named Top Hop, Inc.  For purposes of this opinion, we do not distinguish between the corporation and individuals connected to it.

---

[1]    Because this appeal arises from a ruling on demurrers, our discussion of factual background is based on Stevens's allegations.

[2]    Because some respondents share a surname with parties to the underlying dealings, we refer to them by their first names to avoid confusion. We intend no disrespect.

The following year, Abed and Stevens dissolved their business relationships and Stevens signed a Release and Settlement Agreement (the 1995 release) as a part of those dealings. As discussed below, competing interpretations of the release's terms are at issue in this appeal, including the following definition: "Elhaj and Stevens have signed various agreements with Peichung Chao, Rosana Chao and Chao, Inc., whereby Elhaj and Stevens have acquired that certain restaurant business located at [address] (herein collectively the 'Chao Transaction') . . ." (Capitalization omitted.)

Unbeknownst to Stevens, that same year, Abed negotiated with the owners of the real property to create a 1995 option agreement entered into by the owners and Abed only (Abed Option). Relevant to this appeal, the Abed Option contained the same terms as the 1994 option except that Stevens was not a party to the Abed Option and was not mentioned in the document.

## B. Dealings With Abed's Successors In Interest

Abed died in 2009 and control of his interests relevant to this appeal effectively went to his wife, Milagros Elhaj. In 2016, owners of the business property sent Milagros a letter attempting to "terminate, revoke and rescind" the Abed Option. It was that year, according to the allegations in this case, that Stevens first learned about the Abed Option, when Milagros's attorney sent Stevens a copy of the document. Stevens asserts he then communicated with Milagros, who promised to "protect[]" Stevens's interest in the 1994 option and give "adequate and reasonable compensation for his" interest, in exchange for Stevens not getting involved in Milagros's dispute with the owners.

Three months later, Milagros filed a lawsuit against the owner defendants (the Elhaj lawsuit). She died three years later, in 2019, and her children effectively became her successors for purposes of this appeal. We will refer to the children and Top Hop, Inc., all named defendants in this matter, collectively as the Elhaj defendants, unless

4

specified otherwise. The Elhaj lawsuit was settled that same year and Top Hop, Inc., and Car-Mar, LLC, entered a 50-year lease of the subject property (the 2019 lease).

## PROCEDURAL HISTORY

### A. The Underlying Litigation

Eight days before the 2019 lease was entered, Stevens sent a demand letter to the Elhaj defendants, asserting his purported interest in the 1994 option and claiming Milagros had agreed in 2016 to protect his interest. Seven months later, on February 6, 2020, Stevens sent a letter to the owner defendants to exercise his alleged right to lease the business property under the 1994 option.

Five days later, Stevens filed the underlying 2020 lawsuit against both the owner defendants and Elhaj defendants. Relevant here, Stevens asserts through a verified first amended complaint, six causes of action styled as: (1) declaratory relief, (2) breach of contract, (3) promissory estoppel, (4) specific performance, (5) quiet title, and (6) cancellation of document.

### B. Demurrers and Trial Court Ruling

Both the owner defendants and Elhaj defendants filed demurrers the trial court sustained. In its ruling, the court concluded all of Stevens's equitable claims were barred by the doctrine of laches. Separately, the court also concluded the terms of the 1995 release that Stevens signed could not be reasonably interpreted, as Stevens urged, to mean that he agreed to release all legal interests related to the "Chao Transaction" without including the 1994 option. The court declined to take judicial notice of matters requested by the parties and also rejected Stevens's assertion he had signed the release under duress, reasoning that decades later the point was of no moment. Although Stevens

5

was granted leave to amend, he elected not to and the court subsequently entered the judgment from which Stevens now appeals.[3]

## DISCUSSION

Stevens contends the trial court erroneously sustained the demurrers by applying the doctrine of laches and 1995 release terms to bar his causes of action at this stage of litigation. The defendants argue the court correctly applied laches and correctly concluded the terms of the 1995 release were unambiguous. They additionally argue judicial estoppel also supports an affirmance. The Elhaj defendants have also filed in this court a motion to dismiss this appeal as frivolous. Because we conclude Stevens's appeal should prevail on the merits generally well briefed by all parties, we deny the motion.[4]

*A. Standard of Review*

"'In reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory.'" (*Mathews v. Becerra* (2019) 8 Cal.5th 756, 768.) "'"[W]e give the complaint a reasonable interpretation"'" and, unless its allegations are refuted by attached exhibits (*Nolte v. Cedars-Sinai Medical Center* (2015) 236 Cal.App.4th 1401, 1406 (*Nolte*)) or judicial notice (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6), "we treat the demurrer as an admission by defendants of all material facts properly pled in [the] plaintiff['s] complaint — but not logical inferences, contentions, or conclusions of fact or law" (*Winn v. Pioneer Medical Group, Inc.* (2016) 63 Cal.4th 148, 152). "[W]hen a demurrer is sustained with leave to amend, but the

---

[3]   Although Stevens technically filed a premature appeal, we exercise our discretion to treat it as procedurally sound. (Cal. Rules of Court, rule 8 .104(d)(2).)

[4]   We do not address the Elhaj defendants' claim that Stevens briefed extraneous facts, such as a purported industry custom that contextualizes the 1994 option, because by themselves, the claim would not justify a dismissal of this appeal. We need not consider the context for our disposition.

6

plaintiff elects not to amend, it is presumed on appeal that the complaint states the strongest case possible." (*Ram v. OneWest Bank, FSB* (2015) 234 Cal.App.4th 1, 10.)

"Because a demurrer tests only the legal sufficiency of the pleading, we accept as true even the most improbable alleged facts, and we do not concern ourselves with the plaintiff's ability to prove its factual allegations. [Citation.]" (*Nolte, supra*, 236 Cal.App.4th at p. 1406; see Code of Civ. Proc., § 589 [demurrers raise questions of law].) The sustaining of a demurrer based on an affirmative defense is only appropriate where the face of the complaint or matters subject to judicial notice "'"*clearly* disclose[s] some defense or bar to recovery."'"" (*Stella v. Asset Management Consultants, Inc.* (2017) 8 Cal.App.5th 181, 191; accord, *Favila v. Katten Muchin Rosenman LLP* (2010) 188 Cal.App.4th 189, 224.)

### B. The 1995 Release Terms

The parties dispute whether the 1995 release terms bar Stevens's asserted 1994 option interest at the demurrer stage of litigation. "When a dispute arises over the meaning of contract language, the first question to be decided is whether the language is 'reasonably susceptible' to the interpretation urged by the party. If it is not, the case is over. [Citation.] If the court decides the language is reasonably susceptible to the interpretation urged, the court moves to the second question: what did the parties intend the language to mean? [Citation.] [¶] Whether the contract is reasonably susceptible to a party's interpretation can be determined from the language of the contract itself [citation] or from extrinsic evidence of the parties' intent [citation]." (*Southern Cal. Edison Co. v. Superior Court* (1995) 37 Cal.App.4th 839, 847-848 (*Southern Cal. Edison*).)

The release enumerates four topics of business dealings between Elhaj and Stevens. As quoted in part above, the third of these "enumerated transactions" is described as follows: "[Abed] Elhaj and Stevens have signed various agreements with

Peichung Chao and Rosana Chao and Chao, Inc., whereby Elhaj and Stevens have acquired that certain restaurant business located at [address] (herein collectively the 'Chao Transaction'), including without limitation a sublease dated March 15, 1994, for covering the premises on which the restaurant business is located (the 'Chao Sublease')." (Capitalization omitted.)

The release later states in relevant parts: "Ownership Rights in the Transactions. *With respect to the enumerated transactions*, the parties agree: . . . [¶] . . . Regarding the various leases, agreements and other documents on which Stevens is co-signator with Elhaj, Stevens shall have no further right, title or interest of any kind or nature in or to any of the agreements, contracts, businesses, leases or restaurants and the entirety thereof shall belong solely and exclusively to Elhaj . . . [¶] . . . Stevens hereby relinquishes all right, title and interest of any kind and nature in and to all aspects of the Chao Transaction and acknowledge and agree that Elhaj shall be deemed 100 [percent] owner thereof. Elhaj shall indemnify and hold Stevens and Paul harmless from and against all liabilities, obligations, claims and damages arising out of all aspects of the Chao Transaction, including without limitation the Chao Sublease and operation of any business pursuant to the terms and conditions of the Chao Transaction." (Italics added and underlining omitted.)

*1. The 1995 release is ambiguous for demurrer review purposes*

"'A contract is ambiguous when, on its face, it is capable of two different reasonable interpretations.'" (*Southern Cal. Edison, supra*, 37 Cal.App.4th at p. 848.) Stevens urges the release can be interpreted as not having released his interest in the 1994 option. He relies on the root phrase "enumerated transactions" to urge the 1994 option was not included as one of the release's covered transactions because the "'Chao Transaction'" was explicitly defined as agreements signed by Stevens and Abed "with Peichung Chao and Rosana Chao, and Chao, Inc." (Capitalization omitted.) Stevens

8

correctly notes that none of the Chaos were signatories of the 1994 option, which was signed by Stevens and Abed with the owner defendants.

For our review of the trial court's ruling on the demurrers, the release language at issue is reasonably susceptible to the interpretation urged by Stevens. Although a contract need not necessarily identify all items covered (see, e.g., *Villacres v. ABM Industries Inc.* (2010) 189 Cal.App.4th 562, 587 ["'all claims'" included nonenumerated claims]), a literal reading of the release wording quoted above (Civ. Code, § 1644; all further statutory references are to the Civil Code unless otherwise designated) facially supports a conclusion the parties intended to not include the 1994 option as part of the release (§§ 1636 & 1638).

The defendants rely on the circumstances of the dealings between the parties to argue the only reasonable interpretation of the release language is that it was meant to totally sever the entire relationship between Stevens and Abed as it related to the business property at issue, including the 1994 option. (See §§ 1641 & 1647.) Viewed in context, the owner defendants argue the release is unambiguous because "the 1994 [o]ption arose out of . . . the 'Chao Transaction.'"

The Elhaj defendants emphasize four points of language in the 1995 release to argue the 1994 option was unambiguously meant to be included in the release. Specifically, defendants cite to its paragraph "F," the phrase "documents on which Steven is a co-signator with Elhaj," the phrase "all aspects of the Chao Transaction," and language in a paragraph titled "General Waiver of Claims," to argue the release did not have to explicitly refer to the 1994 option to cover it.

Nothing in the cited language negates the facial ambiguity Stevens points out. The first three of defendants' phrases are all tied to the release's limiting concept of "enumerated transactions." For example, paragraph "F" states: "The parties to this agreement desire to terminate their relationship arising out of each and every of their joint business dealings and to reach an accord and finalize the relationship between each other

9

*arising out of all of the foregoing transactions*." (Italics added.) If the italicized language was not present, the remaining language would indeed support a conclusion that the only reasonable interpretation of the paragraph was that the release covered the logically broadest range of Stevens and Abed's joint business dealings. But the italicized language facially limited the relevant scope of the release to "all aspects of the Chao Transaction." We therefore interpret that phrase and conclude, for the purpose of determining the correctness of the ruling at issue, the explicit definition of the transaction, agreements signed by Stevens and Abed with the Chaos, *could* support a conclusion that Stevens and Abed understood the 1994 option as a dealing interrelated with the "Chao Transaction" but excluded from the coverage of the 1995 release.

As to the Elhaj defendants's fourth point of language in the 1995 release, the paragraph titled "General Waiver of Claims," defendants accurately cite to the following sentence: "Elhaj on the one hand and Stevens on the other hand do hereby release, discharge and acknowledge as fully paid and compromised all claims, demands and causes of action which Elhaj has against Stevens and which Stevens has against Elhaj, except as expressly provided in this agreement, to recover damages against the other, their respective legal representatives, successors, officers, directors and affiliated companies, for injuries, losses and damages of whatever nature sustained or received by Elhaj on the one hand and/or Stevens on the other hand, including damages, consequential damages, injuries or the results of injuries which are unknown or unanticipated by him, *arising out of or in any way related to* any of the various transactions covered by this agreement." (Italics added.)

Defendants argue the broadness of the italicized language shows the scope of the release went beyond the enumerated transactions to include the 1994 option because it was "related to" the "Chao Transaction." But the broad language does not demonstrate unambiguousness because it is reasonably disputed by Stevens that the earlier part of the sentence does not cover the option. According to Stevens's allegations,

10

at the time of the 1995 release neither Abed or the owner defendants had yet refuted Stevens's 1994 option interest, meaning it is disputable whether there was any claim, demand, or cause of action to release (see, e.g., *Mellus v. Potter* (1928) 91 Cal.App. 700, 704 [no proof that when operative document was signed any claim existed]), even assuming the option could be characterized as a claim, demand, or cause of action against Abed (as opposed to the owners of the property). It is sufficient for purposes of this appeal to conclude the general waiver paragraph is not unambiguous.

At oral argument in this court, the Elhaj defendants relied heavily on the "interdependent" and "integral" nature of the transactions connected to the purchase of the Chaos' restaurant business, including the 1994 option, asserting the option could not have been formed without the other transactions occurring. But even assuming arguendo that the characterization of the option's origin is correct, given the parties' divergence on what to infer from that point, it does not follow that for demurrer purposes the contractual language in the 1995 release should be deemed susceptible to only one interpretation as a matter of law. (See generally *Horsemen's Benevolent & Protective Assn. v. Valley Racing Assn.* (1992) 4 Cal.App.4th 1538, 1560 [when parole evidence is introduced to aid interpretation of ambiguous contract language, "the meaning or intent of the parties is a question of fact"].)

In sum, we conclude Stevens's position on ambiguity prevails because, at the demurrer stage of litigation, a tie goes to the runner for contract interpretation disputes. A plain reading of the release language at issue (see § 1639) is consistent with a conclusion that its meaning is capable of the different interpretations urged by the parties (*Southern Cal. Edison, supra*, 37 Cal.App.4th at p. 848).

2. *The Interpretation of the 1995 release urged by Stevens is not clearly erroneous*

"'[W]here an ambiguous contract is the basis of an action, it is proper, if not essential, for a plaintiff to allege its own construction of the agreement. So long as

11

the pleading does not place a clearly erroneous construction upon the provisions of the contract, in passing upon the sufficiency of the complaint, we must accept as correct plaintiff's allegations as to the meaning of the agreement.' [Citation.] . . . [¶] Where a complaint is based on a written contract which it sets out in full, a general demurrer to the complaint admits not only the contents of the instrument but also any pleaded meaning to which the instrument is reasonably susceptible. [Citation.] While plaintiff's interpretation of the contract ultimately may prove invalid, it [is] improper to resolve the issue against her solely on her own pleading. "In ruling on a demurrer, the likelihood that the pleader will be able to prove his allegations is not the question.'"'" (*Aragon-Haas v. Family Security Ins. Services, Inc.* (1991) 231 Cal.App.3d 232, 239.)

On the same plain reading ground discussed above, Stevens's interpretation '"does not place a clearly erroneous construction'" on the 1995 release language, so we '"must accept as correct plaintiff's allegations as to the meaning of the agreement'" for the purpose of reviewing the trial court's ruling on demurrers. (*Aragon-Haas v. Family Security Ins. Services, Inc., supra*, 231 Cal.App.3d at p. 239.) As noted, the trial court concluded that Stevens's interpretation of the language at issue was unreasonable when the release document is read as a whole. We disagree, given the explicit definition of the '"Chao transaction'" which, literally read, limited itself to documents signed between Stevens, Abed, and the Chaos. (§ 1648 ["However broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties intended to contract"].)

## C. Extrinsic Evidence Is Not Dispositive on Demurrer

As they did in the trial court, the defendants rely on extrinsic evidence, including court filings subject to judicial notice, to provide context for what the parties intended by the terms of the 1995 release. (See, e.g., *City of Hope National Medical Center v. Genentech, Inc.* (2008) 43 Cal.4th 375, 393-394 [party's postcontracting,

12

predispute conduct evidences party's contractual intent].)  We grant the owner defendants' requests for judicial notice, but agree with Stevens that the noticed items are not dispositive of Stevens's allegations for purposes of this appeal.

For example, filings in Stevens's bankruptcy case that started in 1996 show he did not then list his now asserted 1994 option as an asset.  The documents show Stevens filed a declaration under penalty of perjury in 2005 in response to the bankruptcy trustee successfully having the case reopened for Stevens's failure to disclose a real property asset, in which Stevens declared to the bankruptcy court that "[t]he only asset I inadvertently omitted from the Schedules in conjunction with my initial filing was the residential real property location at" an address irrelevant to this appeal.  The filings additionally show Stevens first identified his alleged 1994 option to the bankruptcy court in 2020, after he filed the lawsuit here.

In his briefing in this court, Stevens asserts he filed the 2005 declaration, as well as other documents, without disclosing his now asserted interest because of inadvertence and not because he had believed it was extinguished by the 1995 release. He asserts, among other things, that judicial estoppel is not applicable because "the [1994 option] was abandoned to Stevens" by the bankruptcy court.  We reject that unsupported assertion.  Notwithstanding, Stevens correctly notes an element of judicial estoppel is that the "'first position'" asserted (i.e., that Stevens did not possess an interest in the 1994 option) "'was not taken as a result of ignorance, fraud, or mistake.'"  (*Aguilar v. Lerner* (2004) 32 Cal.4th 974, 986-987 [discussing five elements].)

It is not for us to weigh in on factual disputes in this context.  Instead, we conclude the filings raise factual questions that could in theory be rebutted by evidence showing, for example, that a mistake was made. (Code of Civ. Proc., § 589 [demurrers raise questions of law]; see, e.g., *Cloud v. Northrop Grumman Corp.* (1998) 67 Cal.App.4th 995, 1019 ["Cases concerning judicial estoppel have generally been decided after a fact-finding or evidence-reviewing proceeding of some sort"]; see also

13

*Nolte, supra*, 236 Cal.App.4th at p. 1406 ["Because a demurrer tests only the legal sufficiency of the pleading, we accept as true even the most improbable alleged facts, and we do not concern ourselves with the plaintiff's ability to prove its factual allegations"].) In sum, defendants' arguments based on extrinsic evidence do not override our conclusion the 1995 release language is both ambiguous and reasonably susceptible to Stevens's urged interpretation that renders the trial court's sustaining of defendants' demurrers inappropriate.

## D. *The Allegations Are Sufficient to Overcome the Laches Defense on Demurrer*

As noted, the trial court also concluded in its ruling on defendants' demurrers that all of Stevens's equitable causes of action were barred by laches. While laches may under the proper circumstances be established as a matter of law (see *Julian Volunteer Fire Co. Assn. v. Julian-Cuyamaca Fire Protection Dist.* (2021) 62 Cal.App.5th 583, 598, 606, 607 [affirming grant of motion for judgment on the pleadings based on laches]), as a general rule, "the existence of laches is a question of fact to be determined by the trial court in light of all of the applicable circumstances, and in the absence of manifest injustice or a lack of substantial support in the evidence its determination will be sustained. [Citations.]" (*Miller v. Eisenhower Medical Center* (1980) 27 Cal.3d 614, 624.) "[T]he affirmative defense . . . requires unreasonable delay in bringing suit 'plus either acquiescence in the act about which plaintiff complains or prejudice to the defendant resulting from the delay.'" (*Ibid.*)

The trial court applied laches against Stevens's equitable claims because he "waited approximately four years after finding out about the [Abed o]ption before asserting his rights under the 1994 [o]ption" and so unreasonably delayed his assertion of the alleged option. But taking Stevens's allegations at face value for demurrer purposes, we must accept as true the properly pleaded assertion that Milagros repeatedly promised to honor Stevens's 1994 option in exchange for him not injecting it into Milagros's 2016

14

dispute with the property owners. The point could in theory reasonably explain why Stevens did not assert his right at an earlier point in time. According to Stevens's allegations, not only did Milagros know about Stevens's claim (supporting there was a lack of resulting prejudice), she dissuaded him from asserting it at an earlier point in time (supporting there was not an unreasonable delay). Laches should not bar Steven's equitable claims against the Elhaj defendants at the pleadings stage of this litigation.

Whether laches should bar Stevens's equitable claims against the owner defendants requires greater reflection. The face of Stevens's operative complaint shows he learned about the Abed Option in 2016 by receiving a copy of it and a plain comparison of that option and his asserted 1994 option show the documents directly conflicted on the question of whether Stevens had any of the rights he now asserts against the owners. The pleaded facts are reasonably read to mean Stevens chose in 2016 not to directly communicate with the owner defendants because he relied on a promise by Milagros that, to Stevens, rendered the noncommunication reasonable.

The facts as pleaded do not obviate the possibility of discovery shedding material light on the applicable circumstances. Based on the totality of Stevens's allegations we must assume true at this stage, we conclude the question of whether his course of conduct with respect to the owner defendants was reasonable should also remain open to litigation beyond the demurrer stage. (See *City of Oakland v. Public Employees' Retirement System* (2002) 95 Cal.App.4th 29, 52 ["Laches in almost all cases raises factual issues regarding the cause of an asserted delay and the prejudice, vel non, therefrom"].)

In sum, we disagree with the trial court's application of the 1995 release terms and doctrine of laches to sustain defendants' demurrers. Outside of defensive bases, the defendants do not otherwise argue the facts pleaded are insufficient for prima facie showings on the causes of action asserted (two of them are simply requests for types of remedies), nor do we discern a ground to independently arrive at that conclusion. We

15

note that nothing about our conclusions in this opinion, reviewing a ruling on demurrers, should be interpreted as opinions on the ultimate merits of the parties' respective contentions, including those involving the interpretation of contractual terms. (See *City of L.A. v. Los Angeles etc. Council* (1949) 94 Cal.App.2d 36, 50 [reviewing whether precise question on appeal actually decided in earlier appeal].) Our holding here is limited to the conclusion that defendants' demurrers should not have been sustained. The relationship between the 1995 release and Stevens's alleged 1994 option interest is not unambiguous as a matter of law. Factual issues arising from the parties' competing interpretations of contract language and relevant events should not be disposed of without an opportunity to develop relevant facts through discovery.

## DISPOSITION

The judgment of dismissal is reversed and the matter is remanded to the trial court with directions to enter a new order overruling the demurrers. Stevens is entitled to his costs on appeal.

DELANEY, J.

WE CONCUR:

BEDSWORTH, ACTING P. J.

SANCHEZ, J.

16