Filed 7/20/23  Spears v. Kratzer CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| BRIAN SPEARS,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>DEAN KRATZER,<br><br>Defendant and Respondent. | C090514<br><br>(Super. Ct. No. 34201500181475CUBTGDS) |

Plaintiff Brian Spears filed a third amended complaint against defendant Dean Kratzer alleging seven causes of action related to defendant's foreclosure of a property. Defendant demurred and the trial court sustained the demurrer as to each cause of action without leave to amend.  On appeal, plaintiff asserts the trial court erred in sustaining the demurrer for each cause of action without leave to amend.  We shall affirm.

1

BACKGROUND

A.    *The Third Amended Complaint*

On June 19, 2019, plaintiff filed a third amended complaint (complaint) against defendant and others[1] after the trial court sustained defendant's demurrer to the second amended complaint with leave to amend.  The complaint alleges plaintiff was the owner of Brinea Properties, LLC (Brinea) and defendant loaned Brinea money for plaintiff's home in El Dorado Hills (Harwich property).  The complaint characterized defendant as "the lien holder of the first mortgage" on the property.

The complaint's introduction states defendant and his codefendants "have conspired to commit fraud against plaintiff. . . .  Defendants have conspired to ensure plaintiff would not receive his share of the community assets."  The complaint explains that, after plaintiff turned himself in to jail in April 2012, his marriage became strained and, according to plaintiff, L.S. started misappropriating community property.  Relevant here, the complaint alleges L.S. sold another property to pay for the mortgage on the home property and to repair it for sale.  L.S., along with a real estate agent, made several false representations to plaintiff to convince him to sell the other property.  This included plaintiff's right to receive his share of the community property when the property was sold.  When the other property was sold, plaintiff "received only $18,000 with the remaining funds being distributed between" L.S., her brother, the real estate agent, and defendant.

On November 5, 2014, a final judgment of separation was issued as to plaintiff and L.S., giving plaintiff complete ownership of Brinea, which held title to the Harwich property.  Within a day of this judgment, defendant filed for a foreclosure sale of the

---

[1]  The plaintiff has filed this action in propria persona while incarcerated.  The other defendants named in the complaint, including the plaintiff's estranged wife L.S. and two other individuals are not subject to this appeal.

home property with the sale scheduled for December 1, 2014.  Plaintiff filed for bankruptcy protection for Brinea on November 26, 2014.  L.S. told plaintiff she and defendant "were working together and that if [plaintiff] cancelled the bankruptcy [defendant] would help them repair and sell the property."  Plaintiff met with defendant and asked him to cancel the foreclosure sale before he cancelled the bankruptcy, but defendant refused.

After plaintiff undertook to sell the property through a bankruptcy sale, the bankruptcy trustee informed plaintiff that L.S. and defendant were not cooperating with the bankruptcy sale and that defendant "refused to stay the foreclosure sale, only postponing it two weeks at a time.  He also ignored request [*sic*] for payoff information.  [L.S. and defendant] made it known that they wanted the property to foreclosed [*sic*] on."  The bankruptcy trustee's realtor found a buyer, but defendant filed an opposition with the bankruptcy court "stating there was no equity and no buyer, even though he was aware there was a buyer at @$560,000, [*sic*] far above his lien amount of $275,000 plus expenses."  The trustee withdrew, and the property was foreclosed on in October 2015.  The complaint alleges foreclosure and bankruptcy laws were violated because defendant "used documents he knew were fraudulent to foreclose on the property."

The complaint alleges eight causes of action related to these events:  "Unfair Business Practices For False, Misleading, Or Deceptive Acts Or Practice"; "Intentional Violation Of Trust"; "Breach Of Implied Covenant Of Good Faith And Fair Dealings"; "Breach Of Fiduciary Duty"; "Fiduciary Fraud"; "Intentional Fraud (Conspiracy)"; "Intentional Infliction Of Emotional Distress"; and "Negligence (Emotional Distress)."[2] The complaint also seeks exemplary damages.

---

[2]  Original capitalizations are not maintained for any direct quotations to the complaint's causes of action in this opinion.

*B.      The Demurrer*

On July 10, 2019, defendant demurred to the third amended complaint, arguing each cause of action did not state sufficient facts.  Defendant also requested judicial notice of a deed of trust and assignment of rents for the property, showing the loan defendant made to Brinea.  On August 21, 2019, after hearing argument, the trial court sustained defendant's demurrer on each cause of action as to defendant without leave to amend.

Plaintiff timely appealed.[3]

DISCUSSION

I

*Late Filing of Demurrer*

Plaintiff asserts as a threshold issue that the trial court erred in permitting defendant's untimely demurrer to the second amended complaint.  We disagree.

*A.      Additional Facts*

In response to the second amended complaint, defendant filed a motion to dismiss on December 20, 2018, arguing plaintiff failed to serve defendant within three years.  The trial court denied this motion on February 11, 2019.  Defendant filed an automatic 30-day extension for a demurrer on March 5, 2019, noting a responsive pleading was due on March 4, 2019.  Defendant then filed a writ of mandate with this court, which we denied on April 11, 2019.  Defendant then filed a demurrer to the second amended complaint on April 23, 2019.

Plaintiff filed a motion to strike defendant's demurrer for being untimely.  The trial court denied this motion on June 4, 2019, finding:  "[e]ven assuming the demurrer is

---

[3]  Plaintiff's notice of appeal was filed with the trial court on September 16, 2019, but the record on appeal was not filed until September 2022 and this matter was not fully briefed until May 11, 2023.

untimely, the Court has the discretion to consider the demurrer and does so here especially in light of the fact that there is no prejudice as a result of any delay."

B.      *Legal Standards*

"A person against whom a complaint or cross-complaint has been filed may, within 30 days after service of the complaint or cross-complaint, demur to the complaint or cross-complaint." (Code Civ. Proc., § 430.40, subd. (a).) This is a permissive statute, using "may," so the 30-day deadline is not mandatory. (*Jackson v. Doe* (2011) 192 Cal.App.4th 742, 750.) Further, courts "must, in every stage of an action, disregard any error, improper ruling, instruction, or defect, in the pleadings or proceedings which, in the opinion of said court, does not affect the substantial rights of the parties." (Code Civ. Proc., § 475.) Thus, courts have "broad discretion" to permit an untimely demurrer not affecting the substantial rights of the parties. (*Jackson*, at p. 750; *McAllister v. County of Monterey* (2007) 147 Cal.App.4th 253, 282.)

C.      *Analysis*

Plaintiff presents three possible deadlines for defendant's response to the second amended complaint: (1) December 26, 2018, because defendant was served on November 26, 2018[4]; (2) January 25, 2019, if the 30-day extension was valid; or (3) the beginning of March 2019. But regardless of the precise deadline, plaintiff fails to establish the trial court abused its discretion because he has not presented any convincing argument his substantial rights were affected.

Plaintiff's proffered prejudice is that another defendant was able to demur to the third amended complaint because the trial court permitted defendant's demurrer to the

---

[4] Plaintiff does not provide any citation to the record of when defendant was served, nor are we able to find such evidence. (*County of Sacramento v. Singh* (2021) 65 Cal.App.5th 858, 861 [" '[W]e may disregard factual contentions that are not supported by citations to the record [citation] or are based on information that is outside the record [citation]' "].)

second amended complaint. Initially, this other party's demurrer occurred after the trial court ruled on plaintiff's motion to strike defendant's demurrer. It therefore cannot serve as a basis for prejudice at the time of the motion to strike, which is what we must analyze here. And plaintiff presents no argument he was prejudiced at the time of the hearing. But, in any case, his argument is essentially that he was forced to continue litigating his case. This is not an impact of his substantial rights. There is no evidence or argument he had started discovery, had started filing for a default judgment, or was in any other way prejudiced by the delay. (See *McAllister v. County of Monterey, supra*, 147 Cal.App.4th at p. 282 [" 'appellant had not taken any steps to have judgment by default . . . , nor did he endeavor to show that he was in any way prejudiced by the delay' "].) Thus, we find the trial court did not abuse its discretion in permitting defendant to file a late demurrer.

II

*Ruling on the Demurrer*

"On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled. We give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] Further, we treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law. [Citations.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse." (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865.)

A.      *Unfair Business Practices*

1.      *Additional Facts and Argument*

The complaint's first cause of action is for "Unfair Business Practices for False, Misleading, or Deceptive Acts or Practice." This cause of action restates the background

6

facts that defendant misled plaintiff "into believing he was working in the interest of [plaintiff]," defendant interfered with the bankruptcy process, filed misleading documents with the bankruptcy court, refrained from staying foreclosure procedures, and violated foreclosure laws claiming the property was not the owner's primary residence. The trial court found this failed to plead with specificity any unlawful or fraudulent conduct, nor did plaintiff sufficiently allege "any antecedent cause of action such as fraud or violation of a particular law."

Plaintiff contends the complaint alleges defendant specifically violated bankruptcy laws by filing misleading documents, making misleading statements, and interfering with plaintiff's ability to sell the property.

2.      *Legal Standards*

Business and Professions Code section 17200 generally prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." The provision's "coverage is 'sweeping, embracing " 'anything that can properly be called a business practice and that at the same time is forbidden by law' " ' " or any "unfair" practice "that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180, 187.)

"Whether a practice is unfair is a 'determination . . . of fact which requires a review of the evidence from both parties. [Citation.] It thus cannot usually be made on demurrer.' " (*Nolte v. Cedars-Sinai Medical Center* (2015) 236 Cal.App.4th 1401, 1408.) However, " 'courts can and do sustain demurrers on [Business and Professions Code section 17200] claims when the facts alleged fail as a matter of law to show' " an unfair business practice. (*Gray v. Dignity Health* (2021) 70 Cal.App.5th 225, 237, fn. 11.) This is true when a claim is based on unlawful conduct, because without supporting

7

facts demonstrating the illegality of the business practice, "an allegation that it is in violation of a specific statute is purely conclusionary and insufficient to withstand demurrer." (*People v. McKale* (1979) 25 Cal.3d 626, 635; see *Khoury v. Maly's of California, Inc.* (1993) 14 Cal.App.4th 612, 619 ["A plaintiff alleging unfair business practices under these statutes must state with reasonable particularity the facts supporting the statutory elements of the violation"].)

  *3. Analysis*

  The complaint fails to explicitly allege for this cause of action whether defendant's behavior was unlawful, unfair, or fraudulent. But the gravamen of plaintiff's claims are based on unlawful behavior relating to defendant's alleged interference with the bankruptcy court's proceedings resulting in violation of "foreclosure laws." This is confirmed in plaintiff's brief on appeal as he maintains the complaint survives demurrer because it "alleges [defendant's] interfering with the [bankruptcy] proceedings *specifically* refusing to adhere to the [bankruptcy] stay laws." However, the complaint fails to allege with specificity what laws defendant violated and how they were violated. Generally, merely referring to "bankruptcy laws" and "foreclosure laws" is insufficient to withstand demurrer.

  Specificity is particularly important here because it appears this cause of action is reliant on violations of the Bankruptcy Code during bankruptcy proceedings. "The Bankruptcy Code preempts virtually all claims relating to alleged misconduct in the bankruptcy courts." (*In re Pacific Gas & Elec. Co* (N.D. Cal. 2002) 281 B.R. 1, 7; accord, *MSR Exploration, Ltd. v. Meridian Oil, Inc.* (9th Cir. 1996) 74 F.3d 910, 916 [finding a state malicious prosecution action based on behavior during bankruptcy proceedings was "completely preempted by the structure and purpose of the Bankruptcy Code"].) " 'An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.' " (*In re*

8

*Fietz* (9th Cir. 1988) 852 F.2d 455, 457.)  This can include claims brought under Business and Professions Code section 17200 related to events during bankruptcy proceedings.  (See *Rogers v. Nationscredit Fin. Servs. Corp.* (N.D. Cal. 1999) 233 B.R. 98, 110 ["this Court will dismiss Plaintiff's claim under the California Business and Professions Code as preempted by federal law"].)  And a lack of jurisdiction is a basis for sustaining a demurrer.  (Code Civ. Proc., § 430.10, subd. (a).)

Ultimately, there are insufficient facts to determine precisely which laws defendant is alleged to have violated, the precise facts constituting violations of those laws, and the timing of those violations in relation to the bankruptcy proceedings.  So, the complaint fails to allege with the necessary specificity which laws were violated and how, and further, given the alleged unlawful business practices' relatedness to bankruptcy proceedings, the lack of specificity prevents us from assessing whether the Bankruptcy Code preempts these claims.  Thus, this cause of action fails to state sufficient facts for this claim and the trial court properly sustained the demurrer to it.

B.      *Breach of Fiduciary Duty*

        1.      *Additional Facts and Argument*

The complaint's second cause of action is for "Intentional Violation of Trust." Neither the complaint nor plaintiff's arguments on appeal provide any legal authority for this as a distinct cause of action.  Instead, the complaint, the trial court's order, and the parties' arguments treat this cause of action as a breach of fiduciary duty allegation, which the complaint alleges as its fourth cause of action.  We therefore analyze these two causes of action together as one cause of action for breach of fiduciary duty.

The complaint alleges defendant "stepped outside his normal role as a lender" and took "the position as agent when he informed [plaintiff] that he would help [plaintiff] and [L.S.] sell the property and offered services and assistance with repairs and marketing. [¶]  [Defendant] interfered with a potential sell [*sic*] by not cooperating with the Bankruptcy court and by filing documents with false information.  Further, [defendant]

9

refused to properly stay his foreclosure which further hindered [plaintiff's] ability to sell his property." Plaintiff also "trusted that [defendant] would be honest throughout this position as lender on property owned by plaintiff. [¶] This misplaced trust resulted in the injuries to plaintiff, the loss of his entire life savings, totaling over one point three million dollars."

The trial court found this failed to assert facts defendant had a confidential or fiduciary relationship with plaintiff going beyond a traditional lender-borrower relationship, and the loan was made to Brinea and not plaintiff. Further, there were no allegations defendant voluntarily accepted a position of confidence.

Plaintiff contends a duty was owed to him as the owner of the property; defendant went beyond the traditional relationship of a lender; it was defendant "himself who placed himself in the position of trust"; and the complaint alleges the parties had an oral agreement that defendant was an agent for plaintiff. Defendant contends there is no lender-borrower fiduciary duty and even if there was such a thing, the complaint alleges defendant was a lender to Brinea, not plaintiff. There also are no facts establishing any other kind of fiduciary relationship.

2.    *Legal Standards*

" ' "The elements of a cause of action for breach of fiduciary duty are the existence of a fiduciary relationship, its breach, and damage proximately caused by that breach. [Citation.] Whether a fiduciary duty exists is generally a question of law." ' " (*Hodges v. County of Placer* (2019) 41 Cal.App.5th 537, 546.) "A fiduciary relationship is ' "any relation existing between parties to a transaction wherein one of the parties is in duty bound to act with the utmost good faith for the benefit of the other party. Such a relation ordinarily arises where a confidence is reposed by one person in the integrity of another, and in such a relation the party in whom the confidence is reposed, if he voluntarily accepts or assumes to accept the confidence, can take no advantage from his acts relating to the interest of the other party without the latter's knowledge or consent.

10

. . ." ' [¶] Traditional examples of fiduciary relationships in the commercial context include trustee/beneficiary, directors and majority shareholders of a corporation, business partners, joint adventurers, and agent/principal." (*Wolf v. Superior Court* (2003) 107 Cal.App.4th 25, 29 (*Wolf*).) " '[B]efore a person can be charged with a fiduciary obligation, he must either knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law.' " (*Oakland Raiders v. National Football League* (2005) 131 Cal.App.4th 621, 632.)

3.      *Analysis*

Defendant is correct that, even if plaintiff was a party to the loan agreement, "[n]o fiduciary duty exists between a borrower and lender in an arm's length transaction." (*Ragland v. U.S. Bank National Assn.* (2012) 209 Cal.App.4th 182, 206.)  And plaintiff provides no law, and we are not aware of any, establishing a lender owes a fiduciary duty to property owners.  Plaintiff's law and argument discussing a fiduciary duty involve circumstances when a lender may owe a duty to a borrower, not the owner of the property.  The case plaintiff quotes extensively from in his reply brief, *Jolley v. Chase Home Finance, LLC* (2013) 213 Cal.App.4th 872, suffers from this shortcoming and a more fundamental issue that it dealt "with an ordinary duty of reasonable care, not a fiduciary duty." (*Id*. at p. 898.)

Plaintiff's reliance on the alleged contracts are also unavailing.  Plaintiff asserts the allegations of defendant's agreements to help and support the sale of the property created a contractual agency relationship.  But nowhere in the complaint does it allege the defendant knowingly accepted a fiduciary relationship as an agent through these contracts.  A fiduciary relationship goes beyond a contractual relationship.  The mere fact defendant agreed to help plaintiff by performing some services would at most constitute an agreement for those services.  It is true that "[e]very contract requires one party to repose an element of trust and confidence in the other to perform.  For this reason, every

11

contract contains an implied covenant of good faith and fair dealing." (*Wolf, supra*, 107 Cal.App.4th at p. 31.) But this implied covenant "cannot create a fiduciary relationship; it affords basis for redress for breach of contract and that is all." (*Ibid*.)

In short, the complaint makes no allegations beyond the making of an agreement to help repair and sell the property. Without more, this cannot create a fiduciary relationship. And " '[t]he mere placing of a trust in another person does not create a fiduciary relationship.' " (*Apollo Capital Fund, LLC v. Roth Capital Partners, LLC* (2007) 158 Cal.App.4th 226, 246.) Thus, the complaint fails to plead sufficient facts for a breach of fiduciary duty claim.

C. *Breach of the Implied Covenant of Good Faith and Fair Dealing*

1. *Additional Facts and Argument*

The complaint's third cause of action is for "Breach of Implied Covenant of Good Faith and Fair Dealings." The complaint again alleges defendant "stepped outside his traditional role as a lender and established several agreements with" plaintiff. This included "assur[ing] plaintiff that he was not trying to take the equity in the property," would not foreclose as long as plaintiff was trying to sell the property, and "volunteered his services to assist in preparing the property for sale." But defendant "then began to take actions to ensure the property would not be sold by refusing to cooperate with payoff demands."

The trial court sustained the demurrer on this cause of action without leave to amend because it found there was no contract pled between plaintiff and defendant. The loan was between Brinea and defendant, as evidenced by the judicially noticed deed of trust, and the oral promises to help plaintiff were not contracts.

Plaintiff argues the complaint alleges agreements between plaintiff and defendant to not foreclose, cancel the accelerated interest, assist with repairs, and protect the parties' interest. He asserts the complaint further alleges defendant frustrated the purpose of these agreements by refusing to give a payoff and stay foreclosure. Defendant argues

12

no facts were pled alleging an enforceable contract between the parties, and even if there were, an oral agreement on the subject matter is unenforceable.

2. *Legal Standards*

As previously discussed, "every contract contains an implied covenant of good faith and fair dealing." (*Wolf, supra*, 107 Cal.App.4th at p. 31.) This covenant obligates "the contracting parties to refrain from ' "doing anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." ' " (*Ibid.*) Consequently, " '[t]he prerequisite for any action for breach of the implied covenant of good faith and fair dealing is the existence of a contractual relationship. . . .' [Citation.] Without a contractual underpinning, there is no independent claim for breach of the implied covenant." (*Fireman's Fund Ins. Co. v. Maryland Casualty Co.* (1994) 21 Cal.App.4th 1586, 1599.)

A valid contract requires parties capable of contracting, consent, a lawful object, and consideration. (Civ. Code, § 1550.) Consideration is "[a]ny benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled." (Civ. Code, § 1605.) So, "a commitment to perform a preexisting contractual obligation has no value. In contractual parlance, for example, doing or promising to do something one is already legally bound to do cannot constitute the consideration needed to support a binding contract." (*Auerbach v. Great Western Bank* (1999) 74 Cal.App.4th 1172, 1185; Civ. Code, § 1605.) Nor is promising to do what one is already legally obligated to do proper consideration. (*In re Marriage of Sabine & Toshio M.* (2007) 153 Cal.App.4th 1203, 1215 ["a 'legal obligation to perform an act may not constitute consideration for a contract' "].) And moral obligation is sufficient consideration only when it is "the acknowledgment of a prior unenforceable obligation." (*General Credit Corp. v. Pichel* (1975) 44 Cal.App.3d 844, 848; Civ. Code, § 1606; *In re Estate of McConnell* (1936) 6 Cal.2d 493, 498 [" 'moral obligation is sufficient to support an express promise, where a good and valuable consideration has once existed' "].)

13

*3.      Analysis*

Plaintiff never alleges in the complaint, nor asserts on appeal, he personally was a party to the loan agreement. The judicially noticed deed of trust and assignment of rents confirms he was not. The complaint also does not explicitly allege he was personally on the property's title, instead appearing to base his ownership in the property on his ownership in Brinea. Still, even if plaintiff was personally on title to the property with Brinea and also the full owner of Brinea, he presents no law or argument this makes him personally in privity with defendant. This would conflict with established law that "a corporation is regarded as a legal entity, separate and distinct from its stockholders, officers and directors, with separate and distinct liabilities and obligations," (*Sonora Diamond Corp. v. Superior Court* (2000) 83 Cal.App.4th 523, 538), and that "[c]otenants (both joint tenants and tenants in common) may encumber their separate interest without the consent, and without affecting the interests, of other tenants," (*Dieden v. Schmidt* (2002) 104 Cal.App.4th 645, 650). So, the loan agreement between defendant and Brinea could not serve as a basis for any implied covenant of fair dealing claim for plaintiff against defendant.

The complaint does allege several other agreements, but these agreements as pled suffer from a lack of consideration. There is no allegation plaintiff paid defendant or supplied any other form of consideration to bind defendant for his promise to not foreclose, to repair and sell the property, to cancel accelerated interest, or protect the interest of the parties. The pure moral obligation defendant incurred would be insufficient unless it served as support for a new enforceable promise based on the acknowledgement of some antecedent and unenforceable obligation; no such prior obligation is pled. Any other obligation that may be alleged in the complaint would either have been already legally required through the bankruptcy process or through the agreement defendant had with Brinea; these too are not consideration. (Cf. *Garcia v. World Savings, FSB* (2010) 183 Cal.App.4th 1031 ["As a general rule, a gratuitous oral

14

promise to postpone a foreclosure sale or to allow a borrower to delay monthly mortgage payments is unenforceable"].) Thus, the complaint alleges only unenforceable promises, not contracts. And without an enforceable agreement pled, plaintiff fails to state sufficient facts to support a claim for the breach of the implied covenant of good faith and fair dealing.

## D. Fraud

### 1. Additional Facts and Arguments

The complaint's fifth cause of action is for "Fiduciary Fraud." For this claim, the complaint alleges actions constituting defendant's "Breach[] their Fiduciary Duty," and "[t]hese actions were intentional and deceptive, and misrepresented facts to induce [plaintiff's] reliance on them." Specifically, it alleges defendant "intentionally refused to cooperate with the bankruptcy courts to help the [property] sell, even though he had induced [plaintiff] into believing he would assist with the sale. Further his refusal to properly stay the foreclosure sale was a direct effort to disrupt the potential of [plaintiff] selling the property."

The trial court found this cause of action failed to allege any of the required elements for fraud, "much less with the requisite level of specificity." The court also found the complaint failed to allege "how plaintiff relied on such claimed statements."

Plaintiff argues the complaint properly alleges "conspiracy to commit fraud" by stating the particularities of defendant's intentional and false representations involving the foreclosure and sale of the property. The complaint also "establishes that the actions took advantage of [p]laintiff's trust." Defendant asserts the allegations failed to disclose how the statements were made, how plaintiff relied on them, how they were false, or the scienter element.

### 2. Legal Standards

Though this cause of action is entitled "Fiduciary Fraud," plaintiff provides no law describing the elements of this cause of action or makes any allegations in this cause of

15

action related to a fiduciary relationship.[5]  Plaintiff, in his appellate brief, describes the elements for "conspiracy to commit fraud."  Yet, the complaint alleges a distinct cause of action, discussed *post*, for "Intentional Fraud (Conspiracy)."  There are also no allegations related to a conspiracy for the fifth cause of action and the language of the allegation that the defendants' actions "were intentional and deceptive, and misrepresented facts to induce [plaintiff's] reliance upon them" is best understood as a standard fraud claim, which is how the trial court treated this cause of action.  We shall therefore analyze this cause of action as a claim of fraud.

" 'The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.' " (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.)  "In California, fraud must be pled specifically; general and conclusory allegations do not suffice.  [Citation.]  'Thus " 'the policy of liberal construction of the pleadings . . . will not ordinarily be invoked to sustain a pleading defective in any material respect.' "  [Citation.]  [¶]  This particularity requirement necessitates pleading *facts* which "show how, when, where, to whom, and by what means the representations were tendered." ' " (*Id*. at p. 645.)

The trial court found none of the elements of fraud sufficiently pled but focused on the reliance element.  "It is settled that a plaintiff, to state a cause of action for deceit based on a misrepresentation, must plead that he or she actually relied on the misrepresentation." (*Mirkin v. Wasserman* (1993) 5 Cal.4th 1082, 1088.)  Reliance is related to causation, as pleading reliance requires specific allegations to " 'establish a

---

[5]  And we would find unsupported any additional aspect of this cause of action involving a fiduciary relationship for the reasons articulated *infra*.

complete causal relationship' between the alleged misrepresentations and the harm claimed to have resulted therefrom." (*Id*. at p. 1092.)

        *3.*      *Analysis*

We agree with the trial court the complaint fails to allege sufficient facts for the reliance element. The complaint has no allegations, general or specific, that plaintiff relied on any fraud causing harm. Within the allegations of the cause of action, plaintiff generally asserts defendant "misrepresented facts to induce [plaintiff's] reliance upon them." This does not allege plaintiff *did* rely on them. This deficiency is seen in the more specific allegations where the complaint alleges defendant "induced [plaintiff] into believing he would assist with the sale." But there are no allegations plaintiff took any actions in reliance of this induced belief. Believing a fraud and acting in reliance on that fraud are distinct issues. Further, the complaint states defendant filed fraudulent documents with the bankruptcy court that permitted him to foreclose on the property. But these are not allegations that plaintiff was personally defrauded or that he did or did not take any action based on defendant's misrepresentations.

In short, assuming the truth of the allegations, defendant at most convinced plaintiff with intentional misrepresentations that he was going to help, and plaintiff believed these misrepresentations, but missing are any allegations plaintiff took any action in reliance on these misrepresentations.

Two cases underscore the complaint's deficiency. In *Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079, a borrower's complaint alleged the "defendants' act 'caused [the] [p]laintiff to rely on the recorded documents and ultimately lose the property which served as his primary residence, and caused [the] [p]laintiff further damage, proof of which will be made at trial.' " (*Id*. at p. 1091.) The appellate court found this insufficiently pled the reliance element because "[i]t does not identify the particular acts [the plaintiff] took because of the alleged forgeries. Similarly, it does not

17

identify any acts that [the plaintiff] did not take because of his reliance on the alleged forgeries." (*Ibid*.)

Conversely, in *West v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 780, a borrower alleged a bank's misrepresentations " 'lull[ed]' her into 'a false sense of security, so she would not hire an attorney to protect her rights,' and then pursued the foreclosure sale despite telling her . . . that no foreclosure sale had been scheduled." (*Id*. at p. 795.) The appellate court found this sufficient to allege reliance because, under all the allegations of the complaint, the plaintiff "likely would have been successful in taking legal action to stop the sale" absent the misrepresentations. (*Ibid*.)

The complaint's allegations are much more similar to those in *Glaski v. Bank of America* than *West v. JPMorgan Chase Bank, N.A.* There are no allegations of reliance in the complaint, and even if we were to presume plaintiff delayed in acting because of defendant's fraud, there are no allegations any delay caused harm. Put another way, absent are allegations that had plaintiff not delayed because of defendant's fraud he would have been able to avoid foreclosure or some other harm. For example, the complaint alleges L.S. said she and defendant "were working together and that if [plaintiff] cancelled the bankruptcy [defendant] would help them repair and sell the property." Plaintiff met with defendant and asked him to cancel the foreclosure sale before he cancelled the bankruptcy. But crucially, the parties did not reach agreement. There are no allegations plaintiff did in fact cancel the bankruptcy procedures, let alone because of any misrepresentation by defendants. Nor are there allegations of any harm due to plaintiff taking an action or plaintiff's inaction in reliance on defendant's misrepresentations. Thus, the trial court properly found the complaint failed to allege sufficient facts for this cause of action.

*E.      Conspiracy*

    *1.      Additional Facts and Arguments*

The complaint's sixth cause of action is for "Intentional Fraud (Conspiracy)." The complaint restates, for this cause of action, the allegations that defendant promised to not foreclose as long as plaintiff and L.S. were going to sell, and defendant would help them prepare the house for sale, "but again requesting that [plaintiff] cancel his bankruptcy protection." The complaint also alleges defendant "went further and offered to cancel the accelerated interest allowing [plaintiff] to save additional tens of thousands of dollars in equity." Though defendant made these promises, "he never stayed the foreclosure sale as was required by bankruptcy law," instead postponing it only two weeks at a time, making it difficult for plaintiff to sell the house. Finally, it states for this cause of action the "combined efforts of these defendant's lead [*sic*] ultimately to [plaintiff's] loss and injuries. These joint actions were intentionally misleading and were calculated to lure [plaintiff] into reliance and trust, and to ensure [plaintiff] would not receive his entitled share resulting in [plaintiff] losing his life's savings. [¶] In May 2016 after the foreclosure and the resale of the [property], [L.S.] admitted to successfully getting around having to pay [plaintiff] and later admitted she was contacting these defendants so she could get her share stating that [defendant] had finally received his money and the rest was hers."

The trial court sustained the demurrer as to this cause of action without leave to amend because "[t]here are no allegations regarding the formation and operation of the alleged conspiracy to commit fraud, or any allegation for example, that [defendant] was aware a tort was planned."

Plaintiff contends the complaint "establishes the 'how, when, and where, to whom, and by what means' as it pertains to [defendant]. . . . Conspiracy is a combination of two or more persons to accomplish by concerted actions a criminal or unlawful purpose, or lawful purpose by criminal or unlawful means. The [complaint] states the required

19

elements of conspiracy construed liberally." Defendant counters plaintiff failed to allege the formation of a conspiracy or an underlying tort.

2. *Legal Standards*

" ' "The elements of an action for civil conspiracy are the formation and operation of the conspiracy and damage resulting to plaintiff from an act or acts done in furtherance of the common design." ' " (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 511.) A conspiracy to commit fraud must specifically plead the "the 'how, when, where, to whom, and by what means' [citation] of the misrepresentation." (*Favila v. Katten Muchin Rosenman LLP* (2010) 188 Cal.App.4th 189, 211-212.) All coconspirators "are responsible for all acts done as part of the conspiracy if they knowingly agreed to commit fraud and intended to aid its commission." (*Id*. at p. 212.)

3. *Analysis*

The complaint is devoid of any allegations there was a conspiracy. Though the complaint's introduction broadly asserts the defendants "conspired to commit fraud against plaintiff," there are no specific allegations defendant agreed to aid in the commission of fraud or allegations what the conspiracy's misrepresentations were. This is seen in the background fact defendant and L.S. "were working together and that if [plaintiff] cancelled the bankruptcy [defendant] would help them repair and sell the property." Absent from this is an allegation they were working together to *commit fraud*, and such actions were done in commission of that fraud. Instead, this cause of action combines the disparate wrongs each defendant did against plaintiff and tries to form them into a conspiracy by calling them "combined efforts" and "joint actions." But this is legally insufficient. This merely alleges independent and uncoordinated acts affecting plaintiff at the same time, not that these acts were done together as part of a conspiracy.

Also, as previously found, there are insufficient facts pled to assert fraud against defendant, so the allegations regarding defendant's actions could not serve as a basis for any conspiracy to commit fraud. (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.,*

20

*supra*, 7 Cal.4th at p. 511 ["Standing alone, a conspiracy does no harm and engenders no tort liability. It must be activated by the commission of an actual tort"].) There are also no allegations defendant's acts were done in furtherance of another defendant's fraud. Thus, these allegations are insufficient to plead a cause of action for conspiracy, and certainly insufficient for the specificity required for a conspiracy to commit fraud.

## F.      Intentional Infliction of Emotional Distress

The complaint's seventh cause of action is for "Intentional Infliction of Emotional Distress." There are no allegations within this cause of action pertaining to defendant and the trial court, in its order sustaining the demurrer on this cause of action, noted plaintiff in his opposition to the demurrer conceded this did not apply to defendant. It also found no allegations in the complaint could be construed to state a cause of action sufficient for intentional infliction of emotional distress. The trial court had also noted in its order sustaining defendant's demurrer to the second amended complaint the "eighth cause of action for IIED is not alleged against [defendant]."

Plaintiff now contends defendant "was not, even though he should have been, named" in this cause of action because the complaint alleges defendant's behavior resulting in the loss of his home constitutes "actions as extreme and outrageous." But defendant's failure to amend the complaint after the trial court originally noted defendant was not named in this cause of action and then conceding this point before the demurrer at issue on appeal constitutes forfeiture of any challenge to this cause of action. (*Hewlett-Packard Co. v. Oracle Corp.* (2021) 65 Cal.App.5th 506, 548 ["theories not raised in the trial court cannot be asserted for the first time on appeal"].)

## G.      Negligent Infliction of Emotional Distress

### 1.      Additional Facts and Argument

The complaint's eighth cause of action is for "Negligence (Emotional Distress)." The allegations for this cause of action relating to defendant, in their entirety, are: defendant's "agreements with [plaintiff] placed him in a position of trust. [Plaintiff]

21

needed to rely on [defendant] to keep to his agreement not to foreclose as long as [plaintiff] and [L.S.] where [*sic*] moving forward with selling the property. [¶] [Defendant's] decision to focus on helping [L.S.] get around having to give [plaintiff] his entitled share, by filing documents he knew were false etc., was done with reckless disregard to [plaintiff]."

The trial court sustained defendant's demurrer as to this cause of action without leave to amend because there were no facts alleged establishing defendant owed plaintiff a duty of care that could support a claim for negligent infliction of emotional distress.

Plaintiff restates two argument here: (1) causes of action "arising out of a foreclosure belongs to the owner of [r]ecord at the time of the foreclosure, not the original borrower"; and (2) "the agreements between respondent (the lender), and appellant (the owner of record), as described in the [complaint] clearly establishes a relationship and a duty of ordinary care at the least."

2. *Legal Standards*

" ' "[T]he negligent causing of emotional distress is not an independent tort, but the tort of negligence. [Citation.] The traditional elements of duty, breach of duty, causation, and damages apply." ' " (*Arista v. County of Riverside* (2018) 29 Cal.App.5th 1051, 1063.) In these cases, "unless the defendant has assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object, recovery is available only if the emotional distress arises out of the defendant's breach of some other legal duty and the emotional distress is proximately caused by that breach of duty. Even then, with rare exceptions, a breach of the duty must threaten physical injury, not simply damage to property or financial interests." (*Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965, 985.)

3. *Analysis*

We agree with the trial court the complaint has not pled sufficient facts showing defendant owed plaintiff a duty of care. The only allegations that defendant owed

plaintiff a duty is as a fiduciary. For the reasons previously discussed, we reject the legal sufficiency of these allegations.

Plaintiff's arguments on appeal do not convince us otherwise. First, whether the owner of a property must be a party to any action arising from a foreclosure has no relevance to whether a lender has a duty to the owner. Legal standing in a suit over property is a different issue entirely from a duty of care owed to the property owner. Plaintiff provides no legal support for the premise a lender owes a property owner a duty of care under these circumstances that could give rise to emotional damages resulting from a breach of that duty. So, this cannot be a basis to reverse the trial court's decision. (See *In re A.C.* (2017) 13 Cal.App.5th 661, 672-673 ["By not citing any legal authority showing the court had the duties Mother asserts, she has forfeited or waived those arguments"].)

Second, defendant's contract-based arguments fail for the reasons previously discussed. Contracts do not automatically impose duties of care on the parties. (See *Sheen v. Wells Fargo Bank, N.A.* (2022) 12 Cal.5th 905, 922 ["the [economic loss] rule functions to bar claims in negligence for pure economic losses in deference to a contract between litigating parties"].) But even assuming a duty could arise from such contracts, no valid contracts were alleged in the complaint due to the lack of consideration.

III

*Leave to Amend*

We also find the trial court did not abuse its discretion in denying further leave to amend on all causes of action. Defendant states generally, "[a]t the very least those [causes of action] that can be cured by amendment should be given leave to amend." But he fails to make any specific argument how the complaint may be amended to state sufficient facts and how denial of leave to amend results in an abuse of discretion for any of the causes of action; we find this argument waived. (*In re A.C.*, *supra*, 13 Cal.App.5th at p. 672 [" 'When an appellant fails to raise a point, or asserts it but fails to support it

23

with reasoned argument and citations to authority, we treat the point as waived' "].)[6]  But we also find no reasonable possibility defendant could amend any of these claims to state a valid cause of action because he had multiple opportunities to amend his complaint, including after the trial court sustained the demurrer to the second amended complaint, and again, he presents no valid basis for doing so on appeal.[7]

---

[6] Plaintiff does attempt to provide possible amendments on reply but having failed to present them in his opening brief, we can and do disregard these assertions.  (See *Mansur v. Ford Motor Co.* (2011) 197 Cal.App.4th 1365, 1387-1388 [appellate court will not consider arguments raised for the first time in a reply brief because it deprives the appellant of the opportunity to respond to the argument].)

[7] Defendant argued in his opening brief the trial court erroneously ordered sanctions in favor of defendant, but defendant points out this was in favor of another defendant and plaintiff concedes this issue on reply.  Thus, we do not discuss this additional issue.

## DISPOSITION

The trial court's order is affirmed.  Defendant is entitled to his costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)



                                                         /s/
                                        HORST, J.*

We concur:


/s/
RENNER, Acting P. J.


/s/
BOULWARE EURIE, J.

---

\* Judge of the Placer County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

25